607 S.E.2d 698 (2005)
In the Matter of B.M., M.M., An.M, and Al.M.
No. COA04-455.
Court of Appeals of North Carolina.
February 1, 2005.
Eggers, Eggers, Eggers & Eggers, by Stacey C. Eggers, IV, Boone, for petitioner, Watauga County Department of Social Services.
Steven M. Carlson, Boone, for Watauga County Guardian Ad Litem Program.
Charlotte Gail Blake, Jefferson, for respondent-appellant father.
M. Victoria Jayne, Hickory, for respondent-appellant mother.
*699 STEELMAN, Judge.
Respondents appeal an order of the trial court terminating their parental rights to all four of their children. For the reasons discussed *700 herein, we reverse the order of the trial court.
The pertinent factual and procedural history is as follows: respondents are the natural parents of B.M., M.M., An.M, and Al.M., born December 1996, October 1997, April 1999, and August 2000, respectively. Each of the children have special needs, including one child who has cerebral palsy. The family moved to Boone, North Carolina in September 1998. Soon after respondents moved to Boone, Watauga County Department of Social Services (DSS) received a report alleging that respondents' home environment was potentially dangerous in that two of the children had breathing problems, yet the parents kept several animals, and respondents' were such poor housekeepers that the smell and filth were extraordinary. Immediately following receipt of this report, DSS began providing services to the family. Numerous agencies in the county provided respondents with many services in an attempt to educate and assist them in caring for their children. At one point, there were fifteen separate agencies involved with the family. Respondent father receives Social Security Disability due to his extreme learning disability and does not work. Respondent mother works part-time and has a borderline personality disorder and a history of depression. On 6 March 2001, DSS filed a petition alleging the minor children were neglected and dependent following numerous reports of filthy home conditions and marital disputes, and respondents' failure to comply with the family preservation plan. On 15 May 2001, respondents entered into a consent order finding the children dependent. The children remained in respondents' custody, with DSS providing assistance to the family in obtaining services needed for the children.
Following a review hearing in August 2001, the trial court placed physical custody of the children with DSS due to respondents' lack of compliance with the disposition order. DSS continued to make efforts to reunify the children with respondents. As part of DSS's reunification efforts, it developed several case plans for respondents to complete. On 1 August 2002, the trial court relieved DSS of reunification efforts following respondents' failure to comply with the case plans in that they: (1) failed to comply with mental health recommendations; (2) document stable employment; (3) obtain family counseling; (4) obtain financial counseling; (5) address anger management issues; and (6) failed to obtain suitable housing. While in foster care, each of the children made significant improvement.
On 30 June 2003, DSS filed a motion seeking to terminate the parental rights of both parents. This motion alleged as grounds for termination of parental rights pursuant to N.C. Gen.Stat. § 7B-1111(a): that the parents willfully left their children in foster care for more than twelve months without demonstrating they had made reasonable progress to correct the conditions which led to the removal of the children (N.C.Gen.Stat. § 7B-1111(a)(2)); that the children had been placed in the custody of DSS, for a continuous period of six months preceding the filing of the motion (N.C.Gen.Stat. § 7B-1111(a)(3)); and the parents are incapable of caring for the children, such that they are dependent within the meaning of N.C. Gen.Stat. § 7B-101, and there is a reasonable probability that such incapability will continue for the foreseeable future (N.C.Gen.Stat. § 7B-1111(a)(6)). The trial court granted DSS's motion and terminated respondents' parental rights on 21 October 2003. In its order, the trial court cited as grounds for terminating respondents' parental rights § 7B-1111(a)(2) and § 7B-1111(a)(6). The trial court further determined it was in the best interests of the minor children that respondents' parental rights be terminated and entered an order providing for such termination. Respondents appeal.
We first address respondents' second and third assignments of error which deal with the issue of whether the trial court had jurisdiction to enter the order terminating their parental rights.
In respondents' second assignment of error they contend the trial court lacked jurisdiction over this matter because DSS failed to file the petition seeking termination of their parental rights within the time specified by statute, and as a result they were *701 prejudiced. N.C. Gen.Stat. § 7B-907(e) provides that DSS:
shall file a petition to terminate parental rights within 60 calendar days from the date of the permanency planning hearing unless the court makes written findings why the petition cannot be filed within 60 days. If the court makes findings to the contrary, the court shall specify the time frame in which any needed petition to terminate parental rights shall be filed.
N.C. Gen.Stat. § 7B-907(e) (2004). At the 26 August 2002 permanency planning review hearing, the trial court determined that the permanent plan for the children was adoption. DSS did not file a motion to terminate respondents' parental rights until 30 June 2003, almost eleven months later. The trial court did not make any written findings as to why the petition could not be filed within the sixty days or extend the time in which DSS could file the petition.
Recently, this Court held that exceeding the time frames specified in the statutes for adjudication and disposition orders did not amount to reversible error. In re E.N.S., 164 N.C.App. 146, 153, 595 S.E.2d 167, 171-72, disc. review denied, 359 N.C. 189, 606 S.E.2d 903 (2004). We find this reasoning applicable here. The purpose of the legislature in including the filing specifications in the statute was to "provide parties with a speedy resolution of cases where juvenile custody is at issue[,]" as is the case here. Id. at 153, 595 S.E.2d at 172. By holding that the order terminating respondents' parental rights should be reversed simply because it was filed outside of the specified time limit "would only aid in further delaying a determination regarding [the minor children] because juvenile petitions would have to be re-filed and new hearings conducted." Id.
"Mandatory provisions are jurisdictional, while directory provisions are not." Commissioner of Labor v. House of Raeford Farms, 124 N.C.App. 349, 354, 477 S.E.2d 230, 233 (1996). Whether the time provision of N.C. Gen.Stat. § 7B-907(e) is jurisdictional in nature depends on whether the legislature intended the language of that provision to be mandatory or directory. See id. at 353, 477 S.E.2d at 232. "Generally, `statutory time periods are ... considered to be directory rather than mandatory unless the legislature expresses a consequence for failure to comply within the time period.'" Id. at 353, 477 S.E.2d at 233 (citations omitted). Here, none of the statutes in Chapter 7B address the consequences that would flow from the untimely filing of a petition to terminate parental rights. Significantly, N.C. Gen.Stat. § 7B-907(e) fails to provide a consequence for DSS's failure to comply with the sixty-day filing period. See id. at 354, 477 S.E.2d at 233. As a result, we conclude that the time limitation specified in N.C. Gen.Stat. § 7B-907(e) is directory rather than mandatory and thus, not jurisdictional.
While DSS's delay clearly violated the sixty-day provision of N.C. Gen.Stat. § 7B-907(e), we find no authority compelling that the termination of parental rights order be vacated.
Respondents have also failed to show they were prejudiced by the late filing of the petition to terminate their parental rights. Respondents' right to appeal was not affected by the untimely filing. An order following a review hearing or permanency planning hearing that changes the permanency plan from reunification to termination of parental rights is a dispositional order that fits within the statutory language of N.C. Gen.Stat. § 7B-1001. See In re Weiler, 158 N.C.App. 473, 477, 581 S.E.2d 134, 137 (2003). See also In re H.W., 163 N.C.App. 438, 594 S.E.2d 211, disc. review denied, 358 N.C. 543, 599 S.E.2d 46 (2004) (reviewing a decision by the trial court relieving DSS of its reunification efforts following a regularly scheduled court review). Respondents could have appealed from either the review hearing ceasing DSS's efforts to reunify the family or from the permanency planning order which changed the permanency plan for the juveniles to termination of parental rights, as they both constituted dispositional orders which were immediately appealable under the provisions of N.C. Gen.Stat. § 7B-1001.
In this case, DSS's failure to file the petition seeking termination of respondents' parental rights within sixty days as required by *702 N.C. Gen.Stat. § 7B-907(e) is not a ground for reversal.
We do note there are several instances in this case in which the trial court failed to enter various orders within the times specified by statute. One such order was not reduced to writing until approximately eleven months following the hearing. We strongly caution against this practice, as it defeats the purpose of the time requirements specified in the statute, which is to provide parties with a speedy resolution of cases where juvenile custody is at issue.
In respondents' third assignment of error, they contend the trial court lacked jurisdiction to hear the motion to terminate their parental rights because they were not served with the notice required by N.C. Gen.Stat. § 7B-1106.1.
N.C. Gen.Stat. § 7B-1106.1 requires that upon the filing of a motion for termination of parental rights, "the movant shall prepare a notice directed to ... (1) The parents of the juvenile." N.C. Gen.Stat. § 7B-1106.1(a)(1) (2004). Section (b) then lists the things that notice must include. N.C. Gen.Stat. § 7B-1106.1(b). "[W]here a movant fails to give the required notice, prejudicial error exists, and a new hearing is required." In re Alexander, 158 N.C.App. 522, 526, 581 S.E.2d 466, 469 (2003). However, a party who is entitled to notice of a hearing waives that notice by attending the hearing of the motion and participating in it without objecting to the lack thereof. In re J.S., ___ N.C.App. ___, ___, 598 S.E.2d 658, 662 (2004).
In the instant case, respondents made no objection at trial regarding any lack of notice of the proceeding. Furthermore, they were represented by counsel and participated in the termination of parental rights hearing. Respondents have waived their right to now object to the adequacy of notice. This assignment of error is without merit.
We now address respondents' first assignment of error, in which they contend the trial court committed reversible error by failing to appoint a guardian ad litem for them where DSS sought to terminate their parental rights based upon their incapability to provide proper care and supervision of their children.
N.C. Gen.Stat. § 7B-1101 requires that a guardian ad litem shall be appointed, in accordance with Rule 17 of the Rules of Civil Procedure, to represent a parent in a termination hearing

[w]here it is alleged that a parent's rights should be terminated pursuant to G.S. 7B-1111(6)[1], and the incapability to provide proper care and supervision pursuant to that provision is the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or another similar cause or condition.
N.C. Gen.Stat. § 7B-1101(1) (2004) (emphasis added). N.C. Gen.Stat. § 7B-1111(a)(6) provides that a trial court may terminate parental rights upon a finding:
[t]hat the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.
N.C. Gen.Stat. § 7B-1111(a)(6) (2004). A dependent juvenile is defined as a minor child "whose parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen.Stat. § 7B-101(9) (2004). The trial court's failure to appoint a guardian ad litem in such situations requires reversal of the order terminating parental rights, remand for appointment of a guardian ad litem, and a new trial. In *703 re Estes, 157 N.C.App. 513, 518, 579 S.E.2d 496, 499, disc. review denied, 357 N.C. 459, 585 S.E.2d 390 (2003).
In this case, DSS's motion for termination of parental rights states:
That grounds exist pursuant to N.C.G.S. § 7B-1111 for terminating the parental rights of the respondents, to wit: c) That the parents are incapable of providing for the proper care and supervision of the juveniles, such that the juveniles are dependent juveniles within the meaning of N.C.G.S. § 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future.
While DSS's motion for termination of parental rights does not specifically cite to N.C. Gen.Stat. § 7B-1111(a)(6), the language in the motion tracks the language of section (a)(6) verbatim. It is the use of the term "incapable" which triggers the requirement of N.C. Gen.Stat. § 7B-1101 for the appointment of a guardian ad litem. Incapability is defined in the statute as encompassing "substance abuse, mental retardation, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile...." N.C. Gen.Stat. § 7B-1111(a)(6). Since incapability is defined in the statute, it is not necessary that the allegation in the petition specifically state one of the enumerated ways listed under the statute in order to trigger the requirement of appointment of a guardian ad litem.
In this case, both the mother's mental illness and the father's mental retardation factored heavily in the removal of the children from respondents' custody. The allegations and evidence before the trial court tended to show that respondent mother was incapable of providing proper care to her children due to mental illness. In the trial court's order terminating parental rights, the findings of fact provide:
39. That the respondent mother testified that she was suicidal before the children were removed.
42. That the respondent mother has suffered from major depression and borderline personality disorder.
It was these very findings which the trial court based its conclusions of law on in deciding respondents' parental rights should be terminated because the children were dependent and respondent mother was incapable of providing for their needs.
Furthermore, the allegations and evidence before the trial court tended to show that respondent father was incapable of providing proper care to the minor children due to his lack of mental capabilities. The record is replete with evidence from DSS and GAL reports, respondent father's psychological evaluation, and the trial court's previous orders, that both the trial court and DSS found that respondent father suffered at least from mild mental retardation. Furthermore, each of respondents' mental problems were used to magnify that of the other. For example, one DSS report on which the trial court relied, stated that while respondent mother was mentally capable of providing care for her children and learning from the services provided by DSS, respondent mother's "acute psychiatric problems" prevented her from providing supervision and guidance to respondent father regarding the day-to-day care of their children. In a review order entered 31 August 2001, the trial court found that respondent father had "significant mental disability impairing his ability to make unsupervised day-to-day parenting decisions." Evidence was presented at trial concerning respondent father's receipt of Social Security Disability due to his severe learning disability. In DSS's petition to adjudicate the children neglected, it stated "[t]he parents each have emotion/mental problems and conditions which affect their ability to learn and/or to practice what is taught to them about how to provide a more stable, nurturing, and developmentally adequate environment for their children." The petition further went on to state that both parents were "limited in their ability to parent the children by the mother's apparent depression and by the father's mental retardation."
Petitioner argues in the alternative that, even if a guardian ad litem should have been appointed, since another ground existed to terminate respondents' parental rights, which did not require the appointment of a *704 guardian ad litem, the trial court's failure to appoint one was harmless error.
In In re J.D., this Court reversed and remanded a case for the appointment of a guardian ad litem where the trial court did not terminate the respondent's parental rights based on dependency, but where the petition sufficiently alleged dependency and evidence was presented regarding the respondent's relevant debilitating condition. 164 N.C.App. 176, 182, 605 S.E.2d 643, 646, (stating that evidence of the respondent's mental health issues and the child's neglect "were so intertwined at times as to make separation of the two virtually, if not, impossible"), disc. review denied, 358 N.C. 732, 601 S.E.2d 531 (2004). We find this reasoning applicable in this case. The same mental health issues that bear upon respondents' ability to provide proper care and supervision for their children also bears upon whether the parents have made reasonable progress towards correcting the conditions that led to the removal of the children from their home.
The trial court erred in failing to appoint a guardian ad litem to represent respondents. As a consequence, the order terminating respondents' parental rights is vacated and the matter is remanded for new trial.
Since we have remanded this matter for a new trial, we do not reach respondents' remaining assignments of error.
REVERSED AND REMANDED.
Chief Judge MARTIN and Judge McCULLOUGH concur.
NOTES
[1] This statute makes an incorrect reference to "G.S. 7B-1111(6)." However, the language in G.S. 7B-1101(1) tracks identically the language in G.S. 7B-1111(a)(6), thus it is clear that G.S. 7B-1111(a)(6) is the section to which this statute refers.