617 S.E.2d 702 (2005)
In re T.W., L.W., E.H.
No. COA04-1204.
Court of Appeals of North Carolina.
September 6, 2005.
Richard E. Jester, Louisburg, for respondent-appellant.
Eddie E. Winstead, III and Elizabeth Boone, Attorney Advocates for Guardian ad Litem.
E. Marshall Woodall, Lillington, for Petitioner Harnett County Department of Social Services.
*703 JACKSON, Judge.
Respondent is the mother of three minor children, L.W., T.W., and E.H. On 21 February 2001, L.W. and T.W. reported to school officials that they had been sexually abused by their father. When this report was made, L.W. was seven years old, T.W. was five years old, and E.H. was four months old. After an investigation, respondent and her three minor children were removed from the home pursuant to a protection agreement (the "agreement") with a social worker from the Department of Social Services ("DSS"). The agreement provided that the father would have no contact with the minor children.
Doctor V. Denise Everett ("Dr. Everett") and Ms. Nivien I. Carey ("Carey"), a social worker, saw L.W. and T.W. on three separate occasions. Dr. Everett's report stated that there were no physical findings of sexual abuse as to L.W., however, T.W. had tested positive for Chlamydia Trachomatis, a sexually transmitted disease. Dr. Everett concluded that the Chlamydia Trachomatis was indicative of sexual abuse.
On 13 March 2001, DSS filed juvenile petitions alleging sexual abuse and neglect of L.W. and T.W. by their father. After nonsecure orders were issued, L.W. and T.W. were placed in DSS custody. In Carey's first and second evaluations with L.W. and T.W., there were no disclosures regarding any sexual abuse. However, during the 4 April 2001 session, both L.W. and T.W. disclosed sexual abuse acts by their father.
On 27 April 2001, an adjudication hearing was held for L.W. and T.W. The parties stipulated at this hearing to the introduction of Carey's and Doctor Everett's reports. The parties also stipulated that the court could make findings from those evaluations and petitions. The court adjudicated L.W. and T.W. sexually abused and neglected, and at the dispositional hearing, awarded DSS custody over L.W. and T.W. for placement and care.
Subsequently, the father was placed in the Harnett County Jail for committing sexual offenses against L.W. and T.W. On 27 July 2001, the father was acquitted on the incest charge and a jury was unable to reach a unanimous verdict on the charge of taking indecent liberties with a minor. The father was granted a twelve thousand dollar bond on the condition that he not associate with the minor children without an adult present.
Prior to the 24 July 2001 adjudication and disposition order, respondent moved for appointment of a guardian ad litem. The court made note of this motion in its order, but declined to appoint a guardian ad litem prior to respondent's undergoing a psychological evaluation. Respondent's evaluation was conducted over a series of sessions between 10 April 2001 and 11 May 2001. The evaluation, conducted by D. Robert Aiello, Ph.D. ("Dr. Aiello"), concluded that respondent had *704 a diagnosis of Bipolar Affective Disorder, Mixed, Severe, with Possible Psychoactive Behavior. With respect to her Bipolar Disorder, Dr. Aiello specifically noted in his "Impressions and Recommendations" that respondent:
requires continuous, daily access to a fully competent individual (i.e., an individual or guardian for whom there are no concerns about cognitive limitations, psychiatric problems, physical problems, substantive use/abuse problems and/or abusive or neglectful behaviors towards children) upon whom she can rely for support with reference to her daily decision-making, particularly as it applies to any children for whom she is responsible. . . . [Respondent] is expected to require this type of support or guardianship for indefinite future."
Dr. Aiello reiterated his statement about respondent's need for "support or guardianship" again in a subsequent paragraph of his "Impressions and Recommendations."
On 24 August 2001, the court conducted adjudication and dispositional hearings for E.H. and conducted a review hearing as to the custody of L.W. and T.W. The reports of respondent's psychological evaluation were introduced into evidence. The guardian ad litem reports and Carey's reports also were introduced into evidence. The court subsequently adjudicated E.H. as neglected and awarded custody of her to DSS but failed to take up respondent's motion for appointment of a guardian ad litem. The court ceased all efforts by DSS to reunite E.H. with her parents and ceased further visitation rights by the parents.
After the review hearings for L.W. and T.W., the court reviewed the DSS and guardian ad litem reports, respondent's psychological evaluation, and Carey's testimony. The court found that it was adverse to the minor children's welfare to be placed back in their parents' home and that continuation of reunification efforts would be futile. The court, therefore, found that DSS would maintain custody over L.W. and T.W. and that reunification efforts and parental visitation should cease.
After a permanency planning hearing on 21 September 2001, the court entered an order reaffirming its previous findings and conclusions, stating that it was adverse to the minor children's welfare to return to the parents' home. The court established a plan of adoption as their permanent goal and directed DSS to begin termination proceedings. A second permanency planning hearing was held on 24 May 2002, at which time the parents urged the court to return their children home. The court found that respondent continued to live with the father and that she supported him. Accordingly, the court entered an order that stated the minor children would remain in DSS's custody, that DSS should continue the minor children's plan of adoption, and that DSS should begin termination proceedings.
On 19 August 2002, DSS filed a motion to terminate parental rights. A permanency hearing was then held on 8 November 2002, and the court entered an order continuing DSS's custody over the minor children. On 17 February through 19 February 2003, the court presided over a three day special session to hear motions for termination of parental rights. Subsequently, the trial court entered the order terminating parental rights to the three minor children on 18 February 2003, signed nunc pro tunc 17 February 2004, almost one year after completion of the hearing on the matter.
Preliminarily, we must address respondent's contention that the trial court erred in failing to appoint her a guardian ad litem upon her motion when she has a diagnosis of Bipolar Affective Disorder with possible psychotic disorder. We agree.
It is well-settled that a parent has the "`"fundamental right ... to make decisions concerning the care, custody, and control of their children."'" In re S.B., 166 N.C.App. 488, 492, 602 S.E.2d 691, 693 (2004)(quoting Owenby v. Young, 357 N.C. 142, 144, 579 S.E.2d 264, 266 (2003))(quoting Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49, 57 (2000)). Accordingly, the judicial system has a distinct obligation to ensure that parental rights are protected. Id. at 492, 602 S.E.2d at 693 (quoting Corum v. University of North Carolina, 330 N.C. 761, 783, 413 S.E.2d 276, 290 (1992)). In the instant case, we conclude that it would be a grave injustice were we to find the trial court properly disregarded respondent mother's *705 request for appointment of a guardian ad litem.
North Carolina General Statutes section 7B-1111(a)(6)(2003) provides that the trial court may terminate a parent's parental rights if:
the parent is incapable of providing for the proper care and supervision of the juvenile... and ... there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of ... mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.
Based on North Carolina General Statutes section 7B-1101, the trial court shall appoint a guardian ad litem to a parent "[w]here it is alleged that a parent's rights should be terminated pursuant to [North Carolina General Statutes section] 7B-1111(6), and the incapability to provide proper care and supervision pursuant to that provision is the result of ... mental illness, organic brain syndrome, or another similar cause or condition." N.C. Gen.Stat. § 7B-1101(2004).
Here, the trial court referenced respondent's mental well-being and its concern that respondent was unable to raise the minor children without assistance repeatedly in its written orders before and after receiving respondent's psychological evaluation.
In its 25 July 2001 order, based upon the 27 April 2001 hearing which occurred prior to respondent's psychological evaluation, the court included in its Findings of Fact that it was "concerned about the mother's ability to raise these children in light of her mental health and her current medications." The court went on to state that it expected DSS to "take appropriate action, including removing the children from the home" if there were further "concerns over the mother's mental health stability. . . ." Again, in its 13 December 2001 Adjudication and Disposition Order regarding E.H., based upon the 24 August 2001 hearing, the court found that "the []mother exhibited mental health instability." Similarly, in its Review Order of 13 December 2001 regarding T.W. and L.W., also based upon the 24 August 2001 hearing, the court found as a fact that "the psychological evaluations indicates [sic] [respondent] cannot adequately parent on her own." The court reiterated this identical finding in its 13 December 2001 Permanency Planning Order for all three children based upon its 21 September 2001 hearing.
Finally, in its order Terminating Parental Rights, the court made the following finding of fact:
The mother has been diagnosed with bipolar affective disorder with possible psychotic disorder. She is on medication for these ailments, but testified that she could take the medication at her pleasure and when she feels an "episode" coming on. She testified she has been given approval by her physician for this behavior. This testimony is beyond belief and shows a lack of insight by her into her mental status and ability to raise children.
Clearly, the foregoing findings demonstrate the court's awareness of respondent's severe limitations in the ability to parent her children based upon her mental illness. Therefore, notwithstanding the fact that the court did not refer to North Carolina General Statutes section 7B-1111(a)(6) specifically in its order terminating respondent's parental rights, it was the court's repeated findings that respondent was incapable of parenting her minor children based upon her mental illness in addition to respondent's own motion that triggered the requirement for appointment of a guardian ad litem. In re B.M., 168 N.C.App. 350, 356, 607 S.E.2d 698, 702 (2005).
In In re B.M., DSS filed a motion for termination of parental rights pursuant to North Carolina General Statutes section 7B-1111. DSS stated that "the parents [were] incapable of providing for the proper care and supervision of the juveniles ... and that there [was] a reasonable probability that such incapability will continue for the foreseeable future." Id. at 357, 607 S.E.2d at 703 (citation omitted). In concluding that the trial court erred in not appointing the respondent a guardian ad litem, this Court stated that "[i]t is the use of the term `incapable' which triggers the requirement of N.C. Gen.Stat. § 7B-1101 for the appointment of a guardian ad litem." Id. By definition, incapability *706 encompasses respondent's mental illness as presented repeatedly by the court. N.C. Gen.Stat. § 7B-1111(a)(6). While we are cognizant that this Court's reasoning applied to DSS's failure to "specifically cite to N.C. Gen.Stat. § 7B-1111(a)(6)" in their motion to terminate parental rights, we find this case to be instructive. Id. at 357, 607 S.E.2d at 703.
Here, respondent moved for appointment of a guardian ad litem prior to the 24 July 2001 hearing. The trial court, in considering respondent's motion for appointment of a guardian ad litem stated that "[t]he Court holds that motion in abeyance at present until psychological evaluations can be performed on her." However, the court never revisited that motion during the entirety of the ensuing proceedings.
After reviewing the evidence in the record, including all orders set forth by the trial court, it is clear that respondent's mental instability and her incapacity to raise her minor children were central factors in the court's decision to terminate her parental rights. Accordingly, the trial court erred when it failed to appoint respondent a guardian ad litem after reviewing her psychological evaluation on 24 August 2001, yet still considered respondent's mental illness as a factor in terminating her parental rights. The "failure to appoint a guardian ad litem in [this case] ... requires reversal of the order terminating parental rights, remand for appointment of a guardian ad litem, and a new trial." Id. at 357, 607 S.E.2d at 703 (citing In re Estes, 157 N.C.App. 513, 518, 579 S.E.2d 496, 499, disc. rev. denied, 357 N.C. 459, 585 S.E.2d 390 (2003)).
The guardian ad litem's brief in support of appellee, DSS, suggests that respondent's ability to carry out normal daily activities, including testifying coherently on at least two occasions, understanding her surroundings, comprehending issues before the court, and recognizing consequences of her actions, necessarily means that respondent is neither incompetent nor debilitated by her mental illness. We disagree. The definitions section of the North Carolina Mental Health, Developmental Disabilities and Substance Abuse Act of 1985 is helpful to our understanding. It defines mental illness as follows:
"Mental illness" means: (i) when applied to an adult, an illness which so lessens the capacity of the individual to use self-control, judgment, and discretion in the conduct of his affairs and social relations as to make it necessary or advisable for him to be under treatment, care, supervision, guidance, or control; and (ii) when applied to a minor, a mental condition, other than mental retardation alone, that so impairs the youth's capacity to exercise age adequate self-control or judgment in the conduct of his activities and social relationships so that he is in need of treatment.
N.C. Gen.Stat. § 122C-3(21). See Gregory v. Kilbride, 150 N.C.App. 601, 614, 565 S.E.2d 685, 695 (2002)(it was not an abuse of discretion for the trial court to take judicial notice of the "mental illness" definition found in N.C.G.S. 122C-3(21)), disc. rev. denied, 357 N.C. 164, 580 S.E.2d 365 (2003). According to respondent's psychological report and findings of fact listed in numerous court orders, it is clear that the trial court believed respondent was unable to care for or parent the minor children due, in part, to her mental illness. And, while respondent may be competent for some purposes, including her ability to assist counsel and maintain employment, it does not necessarily follow that she is not debilitated by her mental illness when it comes to parenting her children.
As a final matter, we note with great concern the inexcusable time lapse between the hearing on the Motions to Terminate Parental Rights in this matter over the 17-19 February 2003 Special Term of Juvenile Court and entry of the Order on the matter on 17 February 2004-almost one year after completion of the hearing. North Carolina General Statutes section 7B-1109(e) requires that:
[t]he court shall take evidence, find the facts, and shall adjudicate the existence or nonexistence of any of the circumstances set forth in G.S. 7B-1111 which authorize the termination of parental rights of the respondent. The adjudicatory order shall be reduced to writing, signed and entered no later than 30 days following the completion *707 of the termination of parental rights hearing.
In addition, North Carolina General Statutes section 7B-1110(a) provides that:
Should the court determine that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent with respect to the juvenile unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated. Any order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing.
This Court recently has addressed these statutory mandates concluding that although "earlier holdings determined that non-compliance with statutory time lines did not warrant a new termination hearing, absent a showing of prejudice ... our Court's more recent decisions have been apt to find prejudice in delays of six months or more." In re C.J.B., ___ N.C.App. ___, 614 S.E.2d 368, 369 (2005)(internal citations omitted)(citing In re T.L.T., ___ N.C.App. ___, ___, 612 S.E.2d 436, 437-38 (2005); In re L.E.B., ___ N.C.App. ___, ___, 610 S.E.2d 424, 426, disc. rev. denied, 359 N.C. 632, 616 S.E.2d 538 (2005)).
Here, the delay was just short of one full year. As noted by the court in In re C.J.B., the need to show prejudice diminishes as the delay between the termination hearing and the date of entry of the order terminating parental rights increases. At more than ten times the permissible time for entry of the order, the need to show prejudice here is necessarily diminished exponentially. Respondent argues that during the time of delay, she continued to pay child support for her children's benefit, yet was deprived of the opportunity to see them or bond with them in any way. In this case, this is sufficient to show prejudice to warrant reversal based upon the extraordinary delay of entry of the order terminating parental rights.
In light of the foregoing, we need not address respondent's additional assignments of error.
Reversed and remanded.
Judge WYNN concurs in results only.
Judge BRYANT concurs.