637 S.E.2d 258 (2006)
In the Matter of J.J., J.J., J.J., Minor Children.
No. COA05-1510.
Court of Appeals of North Carolina.
December 5, 2006.
Katharine Chester, Siler City, for respondent mother.
Jill Y. Sanchez, Gastonia, for petitioner Gaston County Department of Social Services.
HUDSON, Judge.
On 30 April 2002, the Gaston County Department of Social Services ("DSS") filed a removal petition alleging that respondent mother had neglected her three children. Respondent mother stipulated to the dependency of the children, and the petition was amended to assert dependency in lieu of neglect. The court continued DSS's physical and legal custody of the children, and their placement with the maternal grandmother. Review hearings were held throughout 2003, during which time the permanency plan remained reunification with the mother for two of the children and placement with the father for the third child. At a May 2004 review hearing, the court ordered DSS to develop a plan for reunification.
Following a August 2004 permanency planning hearing, the court entered an order ceasing reunification efforts and changing the children's permanent plan to custody by a guardian or court-approved care-taker. The court entered the order on 24 March 2005. Respondent mother appeals. For the reasons discussed below, we affirm.
Respondent is the mother of three minor children: J.J.(1), a girl born in 1994, J.J.(2), a son born in 2000, and J.J.(3), another son, born in 2001. DSS removed the children in April 2002, alleging that respondent mother left cleaning products in the children's reach, left them unsupervised at home, allowed people on drugs and alcohol into the home, missed the children's medical appointments, and failed to keep her hearing aid working properly. On 24 August 2004, the court held a permanency planning hearing at which DSS presented no evidence. A social worker testified that respondent could manage her children with assistance.
Respondent first argues that the court erred in ceasing reunification efforts and changing the permanency plan to guardianship with a court-approved care-taker where all the evidence supported a conclusion that the children were not dependent at the time of the hearing. We disagree.
All dispositional orders following dependency hearings
must contain findings of fact based upon the credible evidence presented at the hearing. If the trial court's findings of fact are supported by competent evidence, they are conclusive on appeal. In a permanency planning hearing held pursuant to Chapter 7B, the trial court can only order the cessation of reunification efforts when it finds facts based upon credible evidence presented at the hearing that support its conclusion of law to cease reunification efforts.
In re Weiler, 158 N.C.App. 473, 477, 581 S.E.2d 134, 137 (2003) (internal citations omitted). We review the trial court's conclusions of law de novo. Starco, Inc. v. AMG Bonding and Ins. Servs., 124 N.C.App. 332, 336, 477 S.E.2d 211, 215 (1996).
A dependent juvenile is defined as:

*261 A juvenile in need of assistance or placement because the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or whose parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement.
N.C. Gen.Stat. § 7B-101(9) (2006). In entering an order placing a juvenile in the custody of a county department of social services, including a review order, the trial court may stop reunification efforts based on findings of fact that:
(1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]
N.C. Gen.Stat. § 7B-507(b) (2006). Respondent contends that at the time of the permanency planning hearing, the children were no longer dependent.
The court made the following findings:
13. That the level of assistance necessary would require supervision of the Respondent/mother for 24 hours a day/7 days a week to ensure the safety and well being [sic] of the children. The Court in particular is concerned with the security of Ms. J and the children; their vulnerability; and the potential for third parties to disturb their well-being in an independent living environment.
14. That the CBS workers can be available for around the clock one-on-one supervision; however, DSS advises, and the ad litem does not have facts to the contrary, that Medicaid funding is not available for 24/7 care on a permanent basis.
* * *
16. DSS advises, and the guardian ad litem does not have facts to the contrary, that there are no known group home resources wherein Respondent/mother, Fay J, could live together with her children and can obtain the help necessary to assist the family at the required level of supervision.
Here, the court found that respondent could not care for her children without constant assistance, and that such assistance is not available to her. While respondent assigned error to several of the trial court's findings and lists them following the title of her first argument section, specifically findings 4, 5, 13-22 and 24, she does not discuss them in her argument. These assignments of error are presumed abandoned, and all of the court's findings of fact are deemed binding. The findings, included those quoted above, support the court's conclusion that the children were dependent in that respondent "is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen.Stat. § 7B-101(9). The court did not abuse its discretion, and we overrule this assignment of error.
Respondent also contends that the court erred in considering the DSS report and the psychological evaluation because neither was properly admitted. At a dispositional hearing, the court "may consider any evidence . . . that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." N.C. Gen.Stat. § 7B-901 (2006). Thus, the formal rules of evidence do not apply to such hearings. In re M.J.G., 168 N.C.App. 638, 648, 608 S.E.2d 813, 819 (2005). This assignment of error is without merit.
Respondent next argues that the court erred in failing to enter a timely order which prejudiced respondent. We do not agree.
"Any order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the hearing." N.C. Gen.Stat. § 7B-907 (2006). An appellant must show prejudice in order to obtain appellate relief for violation of the 30 day period. In re J.L.K., 165 N.C.App. 311, 316, 598 S.E.2d 387, 391, disc. review denied, 359 N.C. 68, 604 S.E.2d 314 (2004). Here, the order states that the hearing came "on August 24 and 31, 2004. . . . and has been further heard and continued on various dates through December 9, 2004." (Emphasis supplied.) The court entered the order on 24 March 2005. The lapse between completion of the hearing and the entry of the *262 order was approximately 3½ months, 2½ months longer than the statutory period. Respondent cites various termination of parental rights ("TPR") cases where prejudice was shown. See In re C.J.B., 171 N.C.App. 132, 614 S.E.2d 368 (2005); In re L.E.B., 169 N.C.App. 375, 610 S.E.2d 424, disc. review denied, 359 N.C. 632, 616 S.E.2d 538 (2005); In re T.L.T., 170 N.C.App. 430, 612 S.E.2d 436 (2005). Prejudice in these cases was associated with delay in the final settlement of custody and permanency plans where parental rights were being terminated in favor of adoption.
In the instant case, the order changed the permanency plan from reunification to guardianship, and respondent's visitation rights were not being terminated. In fact, because the order reduced her visitation rights, any delay in the entry of the order actually benefitted respondent in that the reduction of her visitation was delayed. Respondent asserts that her oldest child has had negative behaviors resulting from the delay, but the negative behavior began prior to the August 2004 review hearing. Respondent also asserts that she has become depressed; however, the psychological evaluation of respondent reveals that these symptoms began several months before the August 2004 review hearing. Respondent does not allege any specific prejudice occurring as a result of the 2½ month delay in entry of the court's order.
The dissent concludes that respondent did allege specific prejudice occurring as a result of the 2½ month delay in entry of the court's order. However, the only language on this issue in the mother's brief not directly discussing the mother's depression or the older child's negative behavior is the following:
In the case at Bar, "little more than common sense is necessary" to see that for the mother and these children, their wait has been unconscionable. [discussion of delay in Appellate Entries]. . . .
The trial court found as fact that, the "Respondent/mother, Faye J[] dearly loves her children and that the children dearly love her and have a strong bond with their mother." The court found, in fact, that the family is so strongly bonded that it "cannot envision that termination of Ms. J[]'s parental right would be in the best interests of the children in this highly bonded family."
[The next paragraph discusses the daughter's negative behaviors]
[discussion of mother's mild depression] When she visited the children, "they loved and hugged on her." Up until the time of the hearing (from which appeal was taken), Faye and her children visited together two afternoons per week. At that hearing, though, visits were reduced to one (1) hour a week.
Considering the level of bonding among these family members, it takes "little more than common sense" to conclude that they have all been prejudiced by the delays in this case. The trial court must be reversed.
This language is essentially a statement that this family is strongly bonded, but without any allegation that the bonding has been harmed in any way by the 2½ month delay in entry of the order, and a statement that the mother's visitation with the children was reduced by the order. The dissent states that "[a]fter 24 August 2004, respondent and her children saw each other only `one (1) hour a week' supervised." However, the order was not signed and filed until March 2005. There is no indication in the briefs or order or record that the visitation change went into effect and was enforced before the order was signed and filed. The mother's brief indicates that "[a]t that hearing . . . visits were reduced," but does not state that this change actually went into effect or that she actually began seeing her children less. Thus, we conclude she suffered no prejudice from the delay.
Respondent also argues that the court erred in failing to appoint a guardian ad litem for respondent where mental illness was the basis of the allegations that the children were dependent. We disagree.
Our Courts have held that
the language of the statute itself . . . requires the appointment of a guardian ad litem only in cases where (1) it is alleged that a juvenile is dependent; and (2) the juvenile's dependency is alleged to be *263 caused by a parent or guardian being "incapable as the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other similar cause or condition of providing for the proper care and supervision of the juvenile." N.C. Gen.Stat. § 7B-602(b)(1)(2003). Thus, a trial court need not appoint a guardian ad litem pursuant to G.S. § 7B-602(b)(1) unless (1) the petition specifically alleges dependency; and (2) the majority of the dependency allegations tend to show that a parent or guardian is incapable as the result of some debilitating condition listed in the statute of providing for the proper care and supervision of his or her child.
In re H.W., 163 N.C.App. 438, 447, 594 S.E.2d 211, 216 (2004), cert. denied sub nom. In re H.W., 358 N.C. 543, 599 S.E.2d 46 (2004). The petition filed by DSS does not mention any developmental disabilities or limitations. While respondent's brief mentions her learning limitations (highly functioning mentally retarded) and DSS reports requiring her to cooperate with Developmental Disability Services, she cites nothing in the record indicating that her inability to care for her children without constant assistance is due to her mental health issues. This assignment of error is without merit.
The dissent asserts that the court is halting reunification efforts based on poverty in violation of N.C. Gen.Stat. § 7B-1111(a)(2):
The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. Provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.

(Emphasis supplied). Here, the court did conclude that because the mother would need twenty-four hour a day help to cope with and care for her children, "reunification is possible but not financially practical." However, N.C. Gen.Stat. § 7B-1111 governs the termination of parental rights rather than changing a permanency plan to guardianship. Here, the court did not terminate the mother's parental rights. Instead, the hearing was a review hearing held pursuant to N.C. Gen.Stat. § 7B-906 (2003) and a permanency planning hearing held pursuant to N.C. Gen.Stat. § 7B-907 (2003). Neither of these statutes bars consideration of the cost of providing the services deemed necessary for reunification when making a change to the permanency plan.
Affirmed.
Judge WYNN concurs in a separate opinion.
Judge TYSON dissents in a separate opinion.
WYNN, Judge concurring.
I concur fully with the majority opinion. I write separately to point out that notwithstanding the laudable policy statements of the dissent expressing concern for the absence of these children from their mother, this Court and the trial judges who viewed the witnesses in this matter, must follow the law. While the law does indeed provide that dispositional orders shall be entered within thirty days of the hearing, this Court is bound by the prior decisions holding that this is not a per se rule; indeed, the complaining party must articulate the prejudice that arises from a delay beyond thirty days.
By requiring the complaining party to show prejudice, our Courts recognize that technical procedural rules should not be enforced to the exclusion of the common-sense impact on the parties involved. In this case, enforcing the thirty-day rule would further harm these children by delaying the inevitable cessation of efforts to reunite them with a mother who admits she has failed to provide proper care and supervision, and who has shown no evidence that she is willing to cooperate with reunification efforts. A review of the record on appeals confirms a protracted involvement of Department of Social Service and the trial judges in this matter.
The record on appeal shows that over four years ago, on 30 April 2002, DSS filed a *264 neglect petition regarding the three children. The petition alleged that the mother allowed "persons harmful to her children in her home" resulting in the sex abuse of her then six-year old child and the successful prosecution of the perpetrator. The petition also indicated the mother allowed persons under the influence of drugs and alcohol to care for her children. And, the mother failed to follow medical directives for two of her children "diagnosed with William Syndrome, a disorder of the 15th chromosome," which is accompanied by "various special needs."
In response to that petition, the mother "admitted in open court" that "the juveniles do not receive proper care or supervision." Accordingly, on 26 August 2002, District Court Judge Ralph Gingles found the children dependent, placed them in the home of their maternal grandmother, and allowed the mother supervised visits. But, by September 2002, the mother closed her case with Developmental Disabilities and refused to cooperate with DSS and other professionals enlisted to assist her family. She failed to demonstrate appropriate parenting skills, was inattentive to the children during visits, and showed hostility towards the DSS social worker. In the meantime, the Guardian ad Litem for the juveniles who initially favored reunification with the mother, opined that the mother had not made substantial progress and had not shown a willingness to cooperate with personnel from necessary services.
The record shows that trial judges remained active in this matter with Juvenile Orders (dated internally) on 20 May 2002; 23 August 2002; 18 September 2002; 12 December 2002; 15 January 2003; 25 February 2003; 10 April 2003; 29 April 2003; 27 May 2003; 29 July 2003, 28 October 2003; 23 March 2004; 7 May 2004; 13 July 2004; and 31 August 2004. The orders were signed by various district court judges including Judges Ralph C. Gingles, Jr.; James A. Jackson; Dennis J. Redwing; Angela G. Hoyle; and John K. Greenlee.
Significantly, before DSS filed the petition of 30 April 2002, it made numerous efforts to assist the family and prevent the need for placement, namely: Intensive Family Preservation Services, referral to Parents and Children Together, referral to Developmental Disabilities Services, Community Based Services, and resource assessment from the North Carolina Division of Services for the Deaf and Hard of Hearing. DSS also provided financial assistance, case management services, and purchased assistive listening devices to assist the mother in monitoring the home.
Thus, the record shows that in this matter the judges involved, and the employees of the Department of Social Services, exercised diligence. Indeed, the record reflects that the judges in this case performed their duties "impartially and diligently."
Moreover, even if the mother can show prejudice resulting from the delay in filing the order in this case, the prejudice to the children far outweighs the inconvenience to the mother. To reverse this order will do nothing to benefit these children who have too long been denied proper care and supervision which the mother admittedly has failed to provide. In fact, the dissent challenges primarily the technical compliance with the time for filing the order.
In sum, in determining whether the mother has been prejudiced by the delay in entering the order in this matter, I find it significant that she has stated no basis to support the proposition that her appeal from that order, even if made seven months earlier, would have been successful. Second, I find it significant that the trial judges involved in this matter exercised diligence in overseeing and administering this matter. It is apparent to me that the judges in this case acted promptly and made every effort to afford the mother a meaningful opportunity to reunite with her children; she, however, refused that opportunity. Third, the order appealed from compassionately recognizes that the mother is a loving person, but it also acknowledges her inability to provide for these children. Faced with this difficult dilemma, in light of the years of efforts by the employees of the Department of Social Services and the conscientious involvement by numerous trial judges, Judge Jackson who had been involved in this case since 2002, decided that it was time to consider the best interest of the children in this matter. Based on the evidence *265 showing that reunification was not possible within six months due to the mother's need for constant supervision and assistance in order to care for the children, Judge Jackson properly authorized the cessation of reunification efforts.
Since the mother cannot demonstrate that the delay in filing the order prejudiced her ability to file a substantively meritless appeal, I join with Judge Hudson to form a majority opinion that affirms the order of the trial court finding it to be in the best interest of the child to cease reunification efforts.
TYSON, Judge, dissenting.
The majority opinion erroneously affirms the trial court's order, which ceased reunification efforts and changed the children's permanent plan to custody by a guardian or court approved caretaker. The majority opinion holds respondent failed to establish prejudice from the trial court's excessive delay in reducing to writing and entering its order and also fails to address on its merits respondent not being reunited with her three children due to her poverty. I respectfully dissent.

I. Late Entry of Order
N.C. Gen.Stat. § 7B-905(a) (2005) mandates, "The dispositional order shall be in writing, signed, and entered no later than 30 days from the completion of the hearing, and shall contain appropriate findings of fact and conclusions of law." (Emphasis supplied). The statute clearly states the outside limit to enter the order is "no later than 30 days." Id.
This Court has previously stated, "[a] trial court's violation of statutory time limits in a juvenile case is not reversible error per se . . . [T]he complaining party [who] appropriately articulate[s] the prejudice arising from the delay . . . [does] justify reversal." In re S.N.H., ___ N.C.App. ___, ___, 627 S.E.2d 510, 513 (2006).
While "[t]he passage of time alone is not enough to show prejudice, . . . [this Court] recently [held] . . . the longer the delay in entry of the order beyond the thirty-day deadline, the more likely prejudice will be readily apparent." Id. at ___, 627 S.E.2d at 513-14 (quoting In re C.J.B., 171 N.C.App. 132, 135, 614 S.E.2d 368, 370 (2005)).
This Court has repeatedly reversed orders affecting a respondent's parental rights due to prejudice to the respondent, the children, and the other parties, resulting from the trial court's inordinate late entry of its order. In re D.S., ___ N.C.App. ___, ___, 628 S.E.2d 31, 33 (2006). This Court stated in In re D.S.:
Respondent argues the delay prejudiced all members of the family involved, as well as the foster and adoptive parents. By failing to reduce its order to writing within the statutorily prescribed [30 day] time period, the parent and child have lost time together, the foster parents are in a state of flux, and the adoptive parents are not able to complete their family plan. The delay of over six months to enter the adjudication and disposition order terminating respondent-mother's parental rights prejudiced all parties, not just respondent-mother.
___ N.C.App. at ___, 628 S.E.2d at 33 (internal quotations and citations omitted).
This Court held a delay in the entry of an order of six months was "[highly] prejudicial to respondent-mother, the minors, and the foster parent." In re L.E.B., K.T.B., 169 N.C.App. 375, 380, 610 S.E.2d 424, 427, disc. rev. denied, 359 N.C. 632, 616 S.E.2d 538 (2005). Prejudice to the respondent, her children, and all parties involved is clear when:
Respondent-mother, the minors, and the foster parent did not receive an immediate, final decision in a life altering situation for all parties. Respondent-mother could not appeal until entry of the order. If adoption becomes the ordered permanent plan for the minors, the foster parent must wait even longer to commence the adoption proceedings. The minors are prevented from settling into a permanent family environment until the order is entered and the time for any appeals has expired.
Id. at 379, 610 S.E.2d at 426-27 (internal quotations and citation omitted).
Here, the trial court held a review hearing on 24 August 2004 to determine whether *266 respondents' children could be reunited with her. On 31 August 2004, an oral order was rendered in open court. The order was not signed until 18 March 2005 and was ultimately filed and entered seven months after the hearing on 24 March 2005. The order states, "Entered (sic) this 31 day of August, 2004. Signed this the 18th day of March, 2005." The order was not filed in the Gaston County Clerk of Superior Court's Office until 24 March 2005.
The majority opinion erroneously concludes, "[t]he lapse between the completion of the hearing and the entry of the order was approximately 3½ months, 2½ months longer than the statutory period." The majority's conclusion is based upon the contention that, while the matter was heard and the oral rendition of the order was announced at a review hearing on 24 August 2004 and 31 August 2004, the matter was continued through 9 December 2004. The only reference to the 9 December 2004 hearing is in the written order entered. No transcript of the December hearing is filed on appeal. No terms different from those orally rendered in August 2004 are contained in the order entered on 24 March 2005.
Respondent's visitation rights with her children were restricted to "one (1) hour a week" supervised on 24 August 2004. At the hearing on 24 August 2004, respondent's attorney asked, "In terms of visitation, you didn't announce that from the bench, would that be an hour a week . . .?" The trial court responded, "all right." Reunification efforts ceased between respondent and her children on 31 August 2004. The trial court ordered DSS "can cease the reunification efforts with [respondent] and I believe the permanent plan was custody to a guardian." Though the order was purportedly "entered" on 31 August 2004, the order was not signed until 18 March 2005 and filed and entered on 24 March 2005.
A judgment is not entered until "it is reduced to writing, signed by the judge, and filed with the clerk of court." N.C. Gen.Stat. § 1A-1, Rule 58 (2005). Respondent could not notice entry of appeal until the order was "entered," even though all reunification efforts had ceased and her visitation was severely restricted to one hour per week supervised for over seven months. N.C. Gen.Stat. § 1A-1, Rule 58; see Abels v. Renfro Corp., 126 N.C.App. 800, 803, 486 S.E.2d 735, 737 (The Court of Appeals is without authority to entertain appeal of a case which lacks entry of judgment), disc. rev. denied, 347 N.C. 263, 493 S.E.2d 450 (1997).
N.C. Gen.Stat. § 7B-905(a) (2005) specifically states, "[t]he dispositional order shall be in writing, signed, and entered no later than 30 days from the completion of the hearing." (Emphasis supplied). Here, "the hearing" is the date reunification efforts ceased. DSS no longer provided services to respondent, and she remained separated from her children. Her parental rights to the "care, custody, and control" of respondent's children were supervised and restricted to "one (1) hour a week." The order appealed from is from the review hearing which, as the order specifically states, was held on 24 August 2004. For these reasons, the delay in entry of the order is seven months, not three and one-half months.

II. Prejudice to Respondent
The majority opinion next errs in concluding that the delay did not cause prejudice to respondent and concludes, "[r]espondent does not allege any specific prejudice occurring as a result of the 3½ month delay in entry of the court's order." This conclusion dismisses and fails to address respondent's allegations of prejudice.
In her brief, respondent specifically argues and shows the prejudice that resulted from the seven month late entry of this order:
The judge signed the order on 18 March, 2005, nearly seven (7) months later. . . .
[L]ittle more than common sense is necessary to see that for this [respondent] mother and these children, their wait has been unconscionable. . . .
The trial court found as a fact that, "Respondent/mother, Faye J[] dearly loves her children and that the children dearly love her and have a strong bond with their mother." The court found, in fact, that the family is so strongly bonded that it, "cannot envision that termination of Ms. J[]'s parental rights would be in the best interests *267 of the children in this highly bonded family."
Tragically, the oldest child thought she would "be reunited with her mother by Christmas" of 2004. The order additionally stated that she [the oldest daughter] was exhibiting "negative behavior," and those behavior issues were not being addressed because . . . there was poor communication between school personnel and her foster care givers.
While being evaluated, Ms. J [respondent] exhibited symptoms of mild depression, which were caused by not having her children living with her. . . . Up until the time of the hearing (from which appeal was taken,) Faye [respondent] and her children visited together two afternoons a week. At that hearing [24 August 2005], though, visits were reduced to one (1) hour a week.
Respondent's alleged prejudice arose from the separation, limited visitation, and strain on the strong familial bonds the court found to be present between respondent and her children. After 24 August 2004, respondent and her children saw each other only "one (1) hour a week" supervised. The majority opinion dismisses respondent's alleged prejudice that "for this mother and these children, their wait has been unconscionable." Respondent was also prejudiced by not being able to appeal for the seven months that elapsed between the hearing date, when reunification efforts ceased and respondent's visitation was severely restricted, and the trial court's entry of its order.
Upon similar allegations, this Court has repeatedly found prejudice to exist in many cases, upon facts closely analogous to those here. See In re D.M.M., ___ N.C.App. ___, ___, 633 S.E.2d 715, 718 (2006) ("The trial court erred . . . by entering its order an additional seven months after the statutorily mandated time period."); see also In re D.S., ___ N.C.App. at ___, 628 S.E.2d at 33 (The trial court's entry seven months after the termination was a clear and egregious violation of N.C. Gen.Stat. §§ 7B-1109(e) and 1110(a), and the delay prejudiced all parties.); In re O.S.W., ___ N.C.App. ___, 623 S.E.2d 349 (2006) (The trial court's order was vacated because the court failed to enter its order for six months, and the father was prejudiced because he was unable to file an appeal.); In re T.W., 173 N.C.App. 153, 617 S.E.2d 702 (2005) (The trial court entered its order just short of one year from the date of the hearing. This Court reversed the trial court's order.); In re L.L., 172 N.C.App. 689, 616 S.E.2d 392 (2005) (This Court held the nine month delay prejudiced the parents.); In re C.J.B., 171 N.C.App. 132, 614 S.E.2d 368 (2005) (This Court reversed the trial court's order because the trial court failed to enter its order until five months after the hearing.); In re T.L.T., 170 N.C.App. 430, 612 S.E.2d 436 (2005) (This Court reversed the trial court's judgment because the trial court failed to enter its order until seven months after the hearing.). In accordance with these and other precedent, the trial court's order should be reversed.

III. Respondent's Poverty
Respondent argues the trial court's order should be reversed because the trial court's conclusions are based upon respondent's poverty or economic circumstances. I agree and vote to reverse the trial court's order. The trial court specifically found as fact:
9. That the Respondent/mother is supremely motivated to reunite with her children.
10. That the motivation of Respondent/mother, Faye J[], is a significant asset and that she singularly directed her energies toward reunification.
11. That Respondent/mother, Faye J[], dearly loves her children and that the children dearly love her and have a strong bond with their mother[.]
. . . .
15. That Respondent/mother, Faye J[], and her children could reunite, and that such would be in the best interests of the children were this care available with no financial considerations [.]
. . . .
17. In an economic sense, reunification is possible but not financially practical [.]
(Emphasis supplied). Based upon these findings of fact, the trial court concluded "reunification with the Respondent/mother is possible, *268 but is not a practical solution in an economic sense."
The General Statutes and precedents clearly require "no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty." N.C. Gen.Stat. § 7B-1111 (a)(2) (2005). As this Court held in In re Nesbitt, "we also recognize that making ends meet from month to month is not unusual for many families particularly those who live in poverty. However, we do not find this a legitimate basis upon which to terminate parental rights." 147 N.C.App. 349, 359, 555 S.E.2d 659, 665-66 (2001).
Here, the trial court expressly relied on respondent's lack of financial means in reaching its conclusions of law to cease efforts to reunify respondent with her children. The trial court found as fact "[t]hat Respondent/mother, . . ., and her children could reunite, and that such would be in the best interests of the children were this care available with no financial considerations." (Emphasis supplied). Based on this finding of fact, the trial court found as a matter of law "reunification with the Respondent/mother is possible, but is not a practical solution in an economic sense." The trial court also specifically found as fact that reunification with respondent would be "in the best interests of the children."
The statutory presumption requires children be reunited with their parents. A trial court can only cease reunification efforts when clear, cogent, and convincing evidence is presented at the hearing to support such a conclusion. In re Weiler, 158 N.C.App. 473, 477, 581 S.E.2d 134, 137 (2003). The trial court's findings of fact expressly support the conclusion to continue to reunify respondent with her children and fails to support a contrary conclusion. The findings of fact are not supported by clear, cogent, and convincing evidence to support a conclusion of law that it is in the children's best interest to cease reunification efforts with their natural mother.

IV. Conclusion
Our United States Supreme Court has stated:
The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.
Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599, 606 (1982).
Every day a young child is absent from a parent seems like a week, a week's absence seems like a month, a month passes as slowly as a year. To a parent, seven months without the care, custody, and control of her young children and being limited to one hour of supervised visitation per week looms as an eternity when the trial court found the children's best interest compel a contrary conclusion. No excuse is offered in the trial court's order or by DSS to explain why the statutorily required outside entry date of 24 September 2004 for entering the order languished and was not accomplished until 24 March 2005. N.C. Gen.Stat. § 7B-905(a).
In 2005, the People of North Carolina, through their elected representatives in the General Assembly, amended and expressly mandated specific deadlines for DSS to act and for the courts to promptly enter orders when children are removed from their parents' custody. Compliance with these statutory mandates is necessary to enforce the overall objectives of the Juvenile Code, which states, "[t]o provide standards for the removal, when necessary, of juveniles from their homes and for the return of juveniles to their homes consistent with preventing the unnecessary or inappropriate separation of juveniles from their parents." N.C. Gen.Stat. § 7B-100(4) (2005) (emphasis supplied).
These statutory mandates are not suggestions. The recent amendments shortening *269 the required response and order entry times were specifically enacted to preserve federal funding for those important programs. Noncompliance with the deadlines can jeopardize future funding.
Prejudice to respondent and her young children is argued, and prejudice is shown. In re As.L.G., 173 N.C.App. 551, 555, 619 S.E.2d 561, 565 (2005), disc. rev. improvidently allowed, 360 N.C. 476, 628 S.E.2d 760 (2006). Ceasing all services to help resolve the issues that led to the removal of the children from their mother, and procrastination in entering the order, prevented respondent from entering her notice of appeal for seven months until the order was entered. These provisions were placed into effect seven months earlier. This seven month delay in entry neither "promptly" nor "diligently" disposed "of the business of the Court." North Carolina Code of Judicial Conduct, Canon 3, 2006 Ann. R.N.C. 401. This delay is highly prejudicial and bears consequences to those statutorily responsible.
The trial court erred when it failed to enter the order within the statutorily mandated time period. "This late entry is a clear and egregious violation of [the General Statutes], and this Court's well-established interpretation of the General Assembly's use of the word `shall.'" In re L.E.B., K.T.B., 169 N.C.App. at 378, 610 S.E.2d at 426.
Respondent specifically argued and articulated the prejudice she and her children suffered as a result of the egregious late entry of the court's order. In re As.L.G., 173 N.C.App. at 555, 619 S.E.2d at 564 ("[A]n appropriate showing of prejudice arising from the delay could constitute reversal.").
[B]y allowing the trial court to delay its entry of the order terminating the respondent's parental rights, we do nothing to protect the respondent's right to a quick and speedy resolution when his or her appeal is no longer "academic." . . . [I]f, in the interest of efficient case-resolution, this Court allows the trial court to remove an appeal from our purview by issuing an order terminating parental rights, we should at least require that the trial court enter that order in the amount of time mandated by the legislature.
In re L.E.B., K.T.B., 169 N.C.App. at 382, 610 S.E.2d at 428 (Timmons-Goodson, J., concurring).
The separate concurring opinion correctly states the trial court must follow the law. Here, the law requires the order to be entered within the thirty-day deadline mandated by N.C. Gen.Stat. § 7B-905(a) and not be based upon respondent's economic circumstances. Most of the earlier orders referenced in the concurring opinion were entered within days after the hearings were held. Either respondent's poverty or the prejudice respondent and her children suffered due to the inordinate delays in entry of the order which "remove[d] an appeal from our purview," requires reversal of the trial court's order. Id. I respectfully dissent.