610 S.E.2d 424 (2005)
In the Matter of L.E.B., K.T.B.
No. COA04-463.
Court of Appeals of North Carolina.
April 5, 2005.
Julia Talbutt, Wilmington, for petitioner-appellee New Hanover County Department of Social Services.
Regina Floyd-Davis, Wilmington, for petitioner-appellee Guardian ad Litem.
Michelle FormyDuval Lynch, Wrightsville Beach, for respondent-appellant.
*425 TYSON, Judge.
Cora M. Brown ("respondent-mother") appeals the trial court's order terminating her parental rights over her children L.E.B. and K.T.B. (collectively, "the minors"). We reverse and remand for a new hearing.

I. Background
Respondent-mother and Larry E. Brown ("respondent-father"), (collectively, "respondents"), are the parents of L.E.B. and K.T.B.

A. Minor L.E.B.
L.E.B. was born on 8 December 1991 with a cleft palate and congenital heart defect. The New Hanover County Department of Social Services ("DSS") provided respondents with in-home services to help care for L.E.B.'s medical needs. By February 1992, L.E.B. required hospitalization due to weight loss and "failing to thrive." L.E.B. recovered under hospital care and returned home. However, he again became sick. On 11 March 1992, DSS received nonsecure custody of L.E.B. following its petition to the trial court. On 26 March 1992, the trial court conducted a hearing to consider DSS's petition to adjudicate L.E.B. neglected and dependent. The trial court found: (1) respondent-mother was mentally limited, intellectually challenged, and did not understand the level of care L.E.B. required; and (2) respondent-father abuses alcohol. The trial court concluded as a matter of law that L.E.B. was neglected and ordered that: (1) DSS place L.E.B. in foster care; (2) respondents obtain safe and adequate housing; (3) respondent-father submit to substance abuse treatment; and (4) respondents undergo psychological evaluations. Reunification efforts between DSS and respondents tended to show that L.E.B. failed to receive adequate care at respondents' home.

B. Minor K.T.B.
K.T.B. was born on 8 January 1994 with a heart murmur, a defective heart valve, and velo-cardio facial syndrome. On 25 January 1994, DSS filed a petition with the trial court alleging she was a neglected and dependent child based on the adjudication of her brother, L.E.B. The trial court concluded as a matter of law: (1) K.T.B. was dependent and neglected under N.C. Gen.Stat. § 7A-517; (2) her best interests would be served by DSS receiving legal custody; and (3) respondents would maintain physical custody with close supervision by DSS.
Upon review in November 1994, the trial court found that respondents were not meeting the needs of K.T.B. on a regular, consistent, and adequate basis. DSS was granted legal and physical custody of K.T.B. The trial court also ordered reunification efforts to continue between respondents and both minors.

C. Minors L.E.B. and K.T.B.
Review orders were entered on June 1995, June 1996, June 1998, June 1999, January 2000, August 2000, and February 2001. After each review, the trial court ordered the minors to remain in foster care and respondents to continue visitation. The final order dated 1 February 2001 ordered DSS to pursue terminating respondents' parental rights.
In accordance with the 1 February 2001 order, DSS petitioned the trial court on 22 January 2002 to terminate respondents' parental rights to the minors. Hearings were held in February and March 2003.
On 26 September 2003, over 180 days after the hearings, the trial court entered its termination and adjudication order. It concluded as matters of law that: (1) "respondents willfully left the children in foster care for more than 12 months without showing or making reasonable progress in correcting the conditions that led to the removal of the children;" (2) "the children are neglected children and that further conditions of neglect continue to persist such that the children would again be neglected were they returned to the home of their parents;" and (3) "it is in the best interests of the [minors] that the parental rights of [respondents] be terminated." The trial court ordered respondents' parental rights terminated to both children. Respondent-mother appeals. Respondent-father did not appeal.

II. Issues
The issues on appeal are whether: (1) the trial court erred by failing to enter a signed order terminating respondent-mother's parental rights within thirty days of the hearing *426 as required by N.C. Gen.Stat. § 7B-1109(e) and § 7B-1110(a); and (2) clear, cogent, and convincing evidence supported the trial court's findings of neglect and respondent-mother's failure to make reasonable progress towards reunification.

III. N.C. Gen.Stat. § 7B-1109 and § 7B-1110
Respondent-mother argues the trial court erred in terminating her parental rights over the minors by failing to comply with the time limitations imposed by N.C. Gen.Stat. § 7B-1109(e) and § 7B-1110(a). We agree.
N.C. Gen.Stat. § 7B-1109 outlines the process and procedure concerning the adjudication of a termination of parental rights hearing. It provides in part, "[t]he adjudicatory order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing." N.C. Gen.Stat. § 7B-1109(e) (2003) (emphasis supplied).
Following the trial court's adjudication:
Should the court determine that any one or more of the conditions authorizing a termination of parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent.... Any order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing.
N.C. Gen.Stat. § 7B-1110(a) (2003) (emphasis supplied). "This Court has held that use of the language `shall' is a mandate to trial judges, and that failure to comply with the statutory mandate is reversible error." In re Eades, 143 N.C.App. 712, 713, 547 S.E.2d 146, 147 (2001) (citations omitted).
The termination of parental rights hearing for respondents was held on 17 February 2003, 18 February 2003, 26 February 2003, and 19 March 2003. The subsequent adjudication and disposition order terminating respondents' parental rights was reduced to writing, signed, and entered on 18 September 2003, more than 180 days later. This late entry is a clear and egregious violation of both N.C. Gen.Stat. § 7B-1109(e), N.C. Gen.Stat. § 1110(a), and this Court's well-established interpretation of the General Assembly's use of the word "shall." Id. at 713, 547 S.E.2d at 147.
This Court has previously stated that absent a showing of prejudice, the trial court's failure to reduce to writing, sign, and enter a termination order beyond the thirty day time window may be harmless error. See In re J.L.K., ___ N.C.App. ___, ___, 598 S.E.2d 387, 390 (2004) (order entered eighty-nine days after the hearing), disc. rev. denied, 359 N.C. 68, 604 S.E.2d 314 (2004). This holding has also been applied to adjudication and disposition orders involving custody proceedings under N.C. Gen.Stat. § 7B-807(b) and § 7B-905(a). See In re E.N.S., 164 N.C.App. 146, 153, 595 S.E.2d 167, 172 (2004) (no prejudice shown on adjudication and disposition orders entered over forty days after the hearing), disc. rev. denied, 359 N.C. 189, 606 S.E.2d 903 (2004). The reasoning in In re E.N.S. was applied to petitions seeking termination of parental rights under N.C. Gen.Stat. § 7B-907(e). See In the Matter of B.M., M.M., An.M., and Al.M., ___ N.C.App. ___, ___, 607 S.E.2d 698, 702 (2005) (although no prejudice was shown, we stated, "[w]e strongly caution against this practice as it defeats the purpose of the time requirements specified in the statute, which is to provide parties with a speedy resolution of cases where juvenile custody is at issue.").
Although respondent-mother acknowledges the precedents on timeliness, she argues that more than six months is an excessive delay to enter the order and prejudiced her by adversely affecting: (1) both the family relationship between herself and the minors and the foster parent and the minors; (2) delaying subsequent procedural requirements; and (3) the finality of the matter.
We agree with respondent-mother's argument that a delay in excess of six months to enter the adjudication and disposition order terminating her parental rights is highly prejudicial to all parties involved. Respondent-mother, the minors, and the foster parent did not receive an immediate, final decision in a life altering situation for all parties. Respondent-mother could not appeal until "entry of the order." See N.C. Gen.Stat. § 7B-1113 (2003). If adoption becomes the ordered permanent plan for the minors, the *427 foster parent must wait even longer to commence the adoption proceedings. The minors are prevented from settling into a permanent family environment until the order is entered and the time for any appeals has expired.
Further prejudice is shown by the fact that L.E.B., born on 8 December 1991, is thirteen years old, and K.T.B., born on 8 January 1994, is ten years old. Children in the minors' age group traditionally have faced difficulty finding adoptive homes, as many prospective parents seeking to adopt limit their search to infants or younger children.
The delay of over six months to enter the adjudication and disposition order terminating respondent-mother's parental rights prejudiced all parties, not just respondent-mother. See In re E.N.S., 164 N.C.App. at 153, 595 S.E.2d at 172 ("While we have located no clear reasoning for [the thirty day time limit], logic and common sense lead us to the conclusion that the General Assembly's intent was to provide parties with a speedy resolution of cases where juvenile custody is at issue."). Although In re E.N.S. involved N.C. Gen.Stat. § 7B-807(b) and § 7B-905(a), the General Assembly added the same thirty day time limitation to both N.C. Gen.Stat. § 7B-1109(e) and § 7B-1110(a) during the same legislative session. See 2001 N.C. Sess. Laws ch. 208, § 17, § 22, and § 23. The logic applied in In re E.N.S. towards N.C. Gen.Stat. § 7B-807(b) and § 7B-905(a) supports our analysis of N.C. Gen.Stat. § 7B-1109(e) and § 7B-1110(a).
We hold the trial court erred in delaying entry of the termination of parental rights order for over six months and such delay prejudiced all parties to this case. We recognize that in the case at bar, the parties will be delayed further by our holding. However, many prior cases show that those responsible for timely entry of all orders have been remiss in complying within the thirty days required by the statute, which was amended by the General Assembly to provide prompt resolution in such matters. In light of our holding, we decline to address respondent-mother's second assignment of error.

IV. Conclusion
The trial court erred in failing to enter the order terminating respondent-mother's parental rights over the minors within thirty days from the date of the hearing. Such failure was prejudicial to respondent-mother, the minors, and the foster parent. The trial court's order is reversed and this cause is remanded for a new hearing.
Reversed and remanded.
Judge GEER concurs.
Judge TIMMONS-GOODSON concurs by separate opinion.
TIMMONS-GOODSON, Judge, concurring.
I fully concur in the result reached by the majority. I write separately not to distinguish my reasoning in reaching the result, but to distinguish this case from the line of cases preceding it.
As noted by the majority, our General Assembly has recently amended N.C. Gen.Stat. §§ 7B-1109 and 7B-1110 to include the thirty-day requirements at issue in this appeal. During the same session, the legislature also amended N.C. Gen.Stat. §§ 7B-807 and 7B-905 to include similar requirements for the entry of juvenile adjudication and disposition orders. Following the legislature's amendment to these statutes, this Court has received numerous appeals citing violations of the statutory requirements. The appeals have come from all districts and counties within our state, and while some appeals have cited a delay in order-entry of only one and one-half months, others have cited a delay of over a year.
In addressing these appeals, we have traditionally weighed the requirements of the statutes against the practical effects of the delay, and we have examined the alleged harm resulting from the trial court's failure to enter an order within the proscribed period. Our analysis has considered the particular facts of each case, and our resulting decisions have uniformly concluded that where error has occurred, that error has been harmless. In the instant case, respondent asserts that the trial court's failure to *428 enter an order within thirty days of the termination hearing was highly prejudicial to her because the delay prevented her from filing her appeal. While I am aware that this argument has previously been addressed and rejected by this Court, I am persuaded by the contention that the harm done in this case and similar cases is not limited solely to the respondent. In their own respective manners, juveniles, their foster parents, and their adoptive parents are each affected by the trial court's inability to enter an order within the proscribed time period.
I recognize that our holding in this case will only further lengthen the time in which these two juveniles experience life without a permanent plan. However, I note that in the interest of quick and efficient resolution of juvenile cases, this Court has held that where an appeal of a permanency plan is currently pending before us, a subsequent termination of the respondent's parental rights makes the pending appeal moot. In re V.L.B., 164 N.C.App. 743, 745, 596 S.E.2d 896, 897 (2004); see In re N.B., 163 N.C.App. 182, 183, 592 S.E.2d 597, 598 (2004) (holding that an appeal of adjudication and disposition of neglect is rendered moot by subsequent termination of parental rights). By dismissing such pending appeals as "academic" and "moot," we acquiesce in the trial court's decision to unilaterally end the potential delay in disposition caused by the respondent's appeal. But, by allowing the trial court to delay its entry of the order terminating the respondent's parental rights, we do nothing to protect the respondent's right to a quick and speedy resolution when his or her appeal is no longer "academic." I believe that if, in the interest of efficient case-resolution, this Court allows the trial court to remove an appeal from our purview by issuing an order terminating parental rights, we should at least require that the trial court enter that order in the amount of time mandated by the legislature.
Although the requirements of N.C. Gen.Stat. §§ 7B-807, 7B-905, 7B-1109, and 7B-1110 are not overly burdensome, assignments of error based upon violations of the statutes are increasing in number. While I am aware that some of these errors may stem from mere inattentiveness or overcrowded dockets at the trial court level, because of the increasing frequency with which these errors occur, I am concerned that our past reservation in enforcing the statutes may soon be seen as an invitation to ignore their clear mandates. Therefore, because I believe the decision in the instant case aids in the restoration of these mandates, I concur.