619 S.E.2d 561 (2005)
In the Matters of As.L.G. and Au.R.G., Minor Children.
No. COA04-1226.
Court of Appeals of North Carolina.
October 4, 2005.
Charlotte Gail Blake, Jefferson, for respondent-mother.
Paul W. Freeman, Jr., Wilkesboro, for petitioner-appellee.
Sherrie R. Hodges as Guardian ad Litem.
*562 ELMORE, Judge.
Brenda Lee Fausnet (respondent) appeals from the orders terminating her parental rights to her two children, A.R.G. and A.L.G. On 1 May 2002, DSS filed petitions alleging that the children were not receiving proper care and were living in an environment injurious to their welfare. At the 3 June 2002 adjudication hearing, the district court, in part, found the following:
6. Although the mother of the children is in need of psychiatric counseling, she has failed to secure same.
7. The environment in which the children have been living is one characterized by violence and lack of proper supervision.
8. The Wilkes County Department of Social Services has utilized reasonable efforts to eliminate the need for placement of the children, including encouraging the parents to maintain a clean home, securing mental health assistance for the parents, finding a safe environment for the children.
The district court also found that the family had a history of domestic violence, including threats to harm the children, and that the children were filthy and living in extremely dirty conditions. Based on these findings the district court adjudicated the children *563 neglected as defined by N.C. Gen.Stat. § 7B-101(15). According to the record, the district court "entered"[1] the order in open court on the "2nd day of June, 2002"; however, the hearing was on the 3rd of June. Also, the order was signed "this 12 day of September, 2003, nunc pro tunc, June 2, 2002," and filed on 16 September 2003.
On 10 February 2003, the district court conducted a permanency planning hearing. It found that the children would best be served by a permanent plan of adoption and ordered the Wilkes County Department of Social Services (DSS) to cease reunification efforts.[2] The district court also ordered that:
[w]ithin sixty (60) days from the date of this Order, the Wilkes County Department of Social Services shall institute a termination of parental rights action with regard to the parents and shall pursue the completion of such termination of parental rights proceeding. If such termination of parental rights proceeding results in the termination of the children's parents' rights, the Department of Social Services shall then pursue adoption of the children.
The district court's order was "entered" in open court on 10 February, signed the 20th day of February, and filed the next day.
Notably though, DSS failed to initiate a termination of parental rights proceeding within sixty days. In fact, on 18 August 2003, the district court, during a mandated review hearing, again directed DSS to file the petition.
The Court has heretofore approved a permanent plan of adoption for the children, and has directed that [DSS] institute a termination of parental rights proceeding in order to help accomplish the plan of adoption. For reasons unexplained, this has not yet been done. The Court admonished the attorney for [DSS] to make haste in following through with the prior direction of the Court.
Although finding no reason for the delay in institution of termination proceedings, the district court gave DSS an additional ten days "from the filing of this Order" to comply. The order was filed on 5 September 2003. On 29 September 2003, twenty-four days after the second district court's order and over seven months after the first order, DSS filed a petition for termination of parental rights. Respondent argues that the five-month delay by DSS in filing for termination of parental rights prejudiced her case and is therefore reversible error. We disagree.
The statutory time limitation at issue here is N.C. Gen.Stat. § 7B-907(e) (2003), which mandates that DSS "file a petition to terminate parental rights within 60 calendar days from the date of the permanency planning hearing" if termination is "necessary in order to perfect the permanent plan for the juvenile[.]" Id. The General Assembly has placed this burden on DSS "unless the court makes written findings why the petition cannot be filed within 60 days," in which case DSS would comply with the time frame mandated by the district court.[3]Id.
The permanency planning hearing here, in which adoption was identified as the permanent plan, occurred on 10 February 2003. According to the statute then, DSS should have filed its petition to terminate respondent's *564 parental rights on or before 10 April 2003. But DSS did not file the necessary petition until 29 September 2003. Thus, DSS violated the statutory framework which required it to file a petition for termination of respondent's parental rights within sixty days of the permanency planning hearing. Moreover, DSS violated the district court's order demanding the same conduct of them. Then, after admonishment from the district court and a new deadline set, DSS still failed to comply, violating a second order of the court. These violations are clear error and we must now assess whether prejudice has been shown to the parties.
Whether a party has adequately shown prejudice is always resolved on a case-by-case basis; however, determining prejudice is not a rubric by which this Court vacates or reverses an order when, in our opinion, the order is not in the child's best interest. Nor is prejudice, if clearly shown by a party, something to ignore solely because the remedy of reversal further exacerbates the delay. If we were to operate as such, we would either reduce the General Assembly's time lines to a nullity, see In re L.E.B., 169 N.C.App. 375, 382, 610 S.E.2d 424, 428 (Timmons-Goodson, J., concurring) (stressing that reversal was necessary to restore the effectiveness of the General Assembly's mandates), disc. review denied, 359 N.C. 632, 616 S.E.2d 538 (2005); or worse, escalate violations of them beyond the reason for their existence: the best interests of the child. See N.C. Gen.Stat. § 7B-100; In re R.T.W., 359 N.C. 539, 547, 614 S.E.2d 489, 494 (2005) (protracted custody proceedings leaving the relationship of the Zchild and parent unresolved "thwart the legislature's wish that children be placed `in . . . safe, permanent home[s] within a reasonable amount of time.'") (quoting N.C. Gen.Stat. § 7B-100(5) (2003)); In re D.J.D., ___ N.C.App. ___, ___, 615 S.E.2d 26, 35 (2005) ("We reiterate that the best interests of the children are the paramount concern, . . . and they are at issue here, not respondent's hopes for the future.") (internal citations and quotations omitted).
In In re C.J.B., ___ N.C.App. ___, 614 S.E.2d 368 (2005), this Court clarified a growing number of cases dealing with prejudice arising from the district court's delay in filing the order terminating parental rights. There we reaffirmed our prior holdings that any violation of the statutory time lines was not reversible error per se, as many respondents have argued, but that an appropriate showing of prejudice arising from the delay could constitute reversal. See id. at ___, 614 S.E.2d at 369. Importantly, while we stated that prejudice arising from excessive delays "will be readily apparent," we did not alter the appellate rules that the party asserting prejudice must actually bear its burden of persuasion. Id.; see also N.C.R.App. Pro. 10(c)(1) and 28(b)(6). Even if prejudice is apparent without argument, "[i]t is not the role of the appellate courts . . . to create an appeal for an appellant." See Viar v. N.C. Dep't of Transp. 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005).
Appellants in both In re B.M., 168 N.C.App. 350, 607 S.E.2d 698 (2005), and In re C.L.C., ___ N.C.App. ___, 615 S.E.2d 704 (2005), failed to adequately argue prejudice from a delay. In re B.M. dealt with an eight-month delay by DSS in filing a petition to terminate parental rights. Although noting that this delay "clearly violated" the statute, the Court stated that respondent "failed to show they were prejudiced by the late filing. . . ." Id. at 354, 607 S.E.2d at 701.[4] In In re C.L.C., this Court also reviewed a violation of N.C. Gen.Stat. § 7B-907(e). In so doing, we again stated that "this Court has held that time limitations in the Juvenile Code are not jurisdictional in cases such as this one and do not require reversal of orders in the absence of a showing by the appellant of prejudice resulting from the time delay." Id. at ___, 615 S.E.2d at 707 (citing In re J.L.K., 165 N.C.App. 311, 316, 598 S.E.2d 387, 391, disc. review denied, 359 N.C. 68, 604 S.E.2d 314 (2004); In re E.N.S., 164 N.C.App. 146, 153, 595 S.E.2d 167, 172, disc. *565 review denied, 359 N.C. 189, 606 S.E.2d 903 (2004)). As in In re B.M., the respondent in In re C.L.C. fell short of meeting her burden of showing prejudice. "The only prejudice that the mother identifies is that `DSS ceased reunification but waited many months to initiate termination proceedings.' She does not explain in what manner the delay prejudiced her. . . ." Id. at ___, 615 S.E.2d at 708. These cases highlight the need to argue prejudice. Both interpret delays by DSS associated with filing a petition for termination, an eleven-month delay and a three-month delay respectively, but since prejudice was not articulated by any party it could not serve as a basis for reversal.
However, in In re L.E.B., 169 N.C.App. at 378, 610 S.E.2d at 426, respondent-mother argued prejudice on the basis that the delay in filing a termination order, see N.C. Gen. Stat. § 7B-1109(e) (2003), adversely affected the children's relationship with her and her foster parents. We agreed, and in reversing the TPR order further noted that prejudice could befall foster parentswho must continue to wait for adoptionand children, who "are prevented from settling into a permanent family environment until the order is entered and the time for any appeals has expired." Id. at 378-80, 610 S.E.2d at 426-27; see also In re T.L.T., ___ N.C.App. ___, 612 S.E.2d 436 (2005).
In In re B.P., ___ N.C.App. ___, 612 S.E.2d 328 (2005), we evaluated N.C. Gen. Stat. § 7B-905(a), which directs the district court to enter dispositional orders of custody within thirty days of the hearing. There, respondent argued prejudice on the basis that for five unnecessary months she was denied necessary information "from which she could prepare for future proceedings." Id. at ___, 612 S.E.2d at 333. Reversing in agreement, we also noted that respondent articulated prejudice due to the facts that she "was unable to visit the children during the six month delay[,][t]he children were delayed in receiving a permanent family environment[,]. . . [and the] prospective adoptive parents [were] prevented from moving forward with adoption proceedings. Id. at ___, 612 S.E.2d at 334.
In In re D.J.D., we held that respondent could not show prejudice from the court's forty-four day delay in scheduling his hearing date regarding termination when he added sixty-eight days to the overall delay by asking for an additional continuance himself. Id. at ___, 615 S.E.2d at 35. We also noted that reversal was not in the best interests of the children, since for a substantial time they had already been placed with foster parents who were going to adopt them upon termination of respondent's parental rights. Id.
In In re L.L., ___ N.C.App. ___, 616 S.E.2d 392 (2005), we reversed a trial court's order that was delayed eight months beyond the statutory thirty-day requirement in N.C. Gen.Stat. § 7B-906(d). The "unusual circumstances" of the case had both respondent and DSS arguing prejudice from the delayed order. Id. at ___, 616 S.E.2d at 398. After extensive discussion on the issue, we concluded that "the circumstances of this case demonstrate prejudice to L.L., the parents, [DSS], and the statutorily-mandated permanency planning process." Id.
Thus, it is apparent that prejudice can manifest itself in many forms and can equally befall parties other than the respondent, but it must nonetheless be appropriately articulated. Here, respondent has argued prejudice; however, we cannot agree that any befell her from DSS's delay. And without any additional information regarding the best interests of the children, typically expressed by a guardian ad litem, we can ultimately find no prejudice in this case.
Respondent failed to attend the 23 March 2004 hearing on termination of her parental rights. This failure was after the court granted a continuance due to the fact that respondent had not communicated with her attorney before the previously scheduled 18 February 2004 hearing on termination. Respondent does not assert that if DSS timely filed its petition (and a hearing was scheduled reasonably close to the ninety-day deadline), she would have attended. In fact, respondent was barely involved with her children once the permanency plan changed to adoption. Thus, despite respondent's assertions to the contrary, we cannot agree that she was prejudiced by any delay.
*566 It is abundantly clear that despite the General Assembly's mandate that termination proceedings begin within sixty days of the permanency hearing, and in contravention of two court orders requiring termination, along with knowledge from the children's foster parents that they would adopt the children, DSS inexplicably delayed the custody and termination process by five months. Yet, without any input at the appellate level from the guardian ad litem, we are left with only speculation regarding potential prejudice to the children and foster parents in this case and whether the delay contravened the best interest of the children. A.L.G. and A.R.G. resided with their maternal aunt and uncle in foster care since the time when DSS first obtained custody of them. From that point until the termination order was filed, nearly two years passed by. The record also indicates that since first being placed in their care, the children's aunt and uncle had committed to DSS that they would adopt the children. Thus, despite great reservation about the delays in this case, we cannot reverse the termination order absent a showing of prejudice to respondent or any indication that the best interests of the children were prejudiced. Cf. In re D.J.D., ___ N.C.App. ___, 615 S.E.2d 26 (2005) (no prejudice to respondent; no showing that delays prejudice the child's best interest); In re L.L., ___ N.C.App. ___, 616 S.E.2d 392 (2005) (best interest of the child prejudiced); In re L.E.B., 169 N.C.App. 375, 610 S.E.2d 424 (2005) (prejudice to respondent-mother).
Respondent next argues that the district court erred in failing to appoint her a guardian ad litem. It is unclear from respondent's assignment of error whether she is alleging she was entitled to a guardian ad litem pursuant to N.C. Gen.Stat. § 7B-1101 or N.C. Gen.Stat. § 7B-602(b). In In re J.D., we interpreted section 7B-1101 and reversed the trial court's order denying a guardian ad litem because, although DSS alleged termination of parental rights was based on neglect instead of dependency, the evidence of respondent's mental health issues and the child's neglect "were so intertwined at times as to make separation of the two virtually, if not, impossible." 164 N.C.App. 176, 182, 605 S.E.2d 643, 646, disc. review denied, 358 N.C. 732, 601 S.E.2d 531 (2004). We recently applied the analysis of In re J.D. to that of section 7B-602 as well. See In re C.B., ___ N.C.App. ___, 614 S.E.2d 579, 581-82 (2005). However, under either statute, we cannot agree with respondent that the sparse references to her need for counseling and drug treatment rise to the level of being so intertwined with the neglect of her children as to be virtually inseparable. Cf. In re C.B., ___ N.C.App. at ___, 614 S.E.2d at 582 (reversing for failure to appoint guardian ad litem); In re B.M., 168 N.C.App. at 355-57, 607 S.E.2d at 702-03 (same). Here, DSS recommended counseling as part of respondent's family plan, and no significant evidence exists in the record that would suggest respondent's parental rights were terminated due to any mental illness or substance abuse. Accordingly, based on the record before us, we would not agree with respondent that she was entitled to the appointment of a guardian ad litem.
Respondent also argues that the district court erred in terminating her parental rights on the grounds that the children were neglected and that she willfully left the children in foster care for more than twelve months without progress in her family plan. See N.C. Gen.Stat. § 7B-1111(a)(1) and (2) (2003). We find clear, cogent, and convincing evidence in the record supporting the district court's findings of fact, which in turn support its conclusion to terminate respondent's parental rights. See In re Allred, 122 N.C.App. 561, 565, 471 S.E.2d 84, 86 (1996) ("In a termination proceeding, the appellate court should affirm the trial court where the court's findings of fact are based upon clear, cogent and convincing evidence and the findings support the conclusions of law.").
Although respondent properly assigns error to several of the district court's findings, and arguably briefs them, there is no citation of any authority that would support her position. Essentially, she argues that her actions or omissions in parenting that led to the district court's finding two grounds on which to terminate her rights, can all be accounted for by her poverty. Several examples of this interconnectedness cited by respondent are *567 her failure to obtain psychological evaluations or attend counseling, and her inability to leave a working phone number where she could be contacted. We see no connection between respondent's failure to abide by the district court's orders and her impoverished state.
Respondent also argues, when rebutting the findings and conclusions of neglect, that the allegations reflect her mental illness and she should have had a guardian ad litem. We have already determined this was not the case and find no support for this argument either. Thus, without more from respondent, we find that the evidence supports the trial court's findings and those findings support its conclusions.
We further conclude that since at least one ground was proven to terminate respondent's parental rights, the district court did not abuse its discretion in determining that termination was in the children's best interest. See id. at 569, 471 S.E.2d at 88; In re D.J.D., ___ N.C.App. at ___, 615 S.E.2d at 32. We have carefully reviewed respondent's other assignments of error and find them to be without merit. Accordingly, we affirm the orders of the district court terminating respondent's parental rights to A.L.G. and A.R.G.
Affirmed.
Judges McGEE and CALABRIA concur.
NOTES
[1] For a discussion of when an order is entered see N.C. Gen.Stat. § 1A-1, Rule 58 (2003), Stachlowski v. Stach, 328 N.C. 276, 401 S.E.2d 638 (1991), and In re Hayes, 106 N.C.App. 652, 418 S.E.2d 304 (1992). See also In re L.L., ___ N.C.App. ___, ___, 616 S.E.2d 392, 397 (2005).
[2] Although the permanency planning order is not before us, we find it imperative to note that the district court may rely on and incorporate previous orders or reports submitted to it, but it cannot delegate its role as an independent finder of ultimate facts. See In re J.S., 165 N.C.App. 509, 598 S.E.2d 658 (2004) (findings that are conclusions or mere recitation of the status of the case do not meet the requirements of N.C. Gen.Stat. § 7B-907); In re Harton, 156 N.C.App. 655, 577 S.E.2d 334 (2003) (district court may rely on outside reports but cannot delegate its independent fact finding role to another party).
[3] According to the plain language of N.C. Gen. Stat. § 7B-907(e) there is nothing to prevent a district court judge from making findings in the permanency planning order that address the time frame in which DSS shall file the petition to terminate parental rights, so long as an extension is in the best interests of the child. Cf. N.C. Gen.Stat. § 7B-1109(a) and (d) (2003) (noting that extensions in holding the hearing beyond 90 days "shall be granted only in extraordinary circumstances").
[4] The Court in In re B.M. also stated: "we find no authority compelling that the termination of parental rights order be vacated," Id. at 354, 607 S.E.2d at 701, however, In re B.M. was decided before In re L.E.B., 169 N.C.App. 375, 610 S.E.2d 424, disc. review denied, 359 N.C. 632, 616 S.E.2d 538 (2005), the first case of several to provide that authority.