643 S.E.2d 458 (2007)
In re C.L.K., a Minor Child.
John Owen and Janet Owen, Petitioners,
v.
Christopher Rob Keeter, Respondent.
No. COA06-942.
Court of Appeals of North Carolina.
April 17, 2007.
Blanchard, Newman & Hayes, by Ronald G. Blanchard, Hendersonville, for petitioners-appellees.
Thomas B. Kakassy, PA, by Thomas B. Kakassy, Gastonia, for respondent-appellant.
TYSON, Judge.
Christopher Rob Keeter ("respondent") appeals from order entered terminating his parental rights to his minor child, C.L.K. We reverse.

*459 I. Background

On 22 April 1998, J.R.O. ("mother") gave birth to C.L.K. Respondent is C.L.K.'s biological father. Since 1999, C.L.K. has resided with her maternal grandparents, John Owen and Janet Owen ("the maternal grandparents"). In July 2002, C.L.K.'s mother died. C.L.K.'s maternal grandparents have provided for C.L.K. since her mother's death. Respondent visited C.L.K. five or six times after her mother's death. Respondent's last visited with C.L.K. during August 2003.
On 30 April 2004, the maternal grandparents filed a petition to terminate respondent's parental rights and alleged respondent: (1) willfully failed to provide support for C.L.K. for over one year; (2) willfully abandoned C.L.K. for at least six consecutive months immediately preceding the filing of the petition; and (3) has been incarcerated most of C.L.K.'s life. The maternal grandparents intend to adopt C.L.K. In August 2004, respondent was incarcerated for felony breaking and entering and larceny.
On 11 October 2005, the trial court conducted a hearing on whether to terminate respondent's parental rights. On 22 March 2006, the trial court found respondent had: (1) willfully failed to provide support for C.L.K. for over one year preceding the institution of this action and (2) willfully abandoned C.L.K. for at least six consecutive months immediately preceding the filing of this action. The trial court also found and concluded C.L.K.'s best interest was served by terminating respondent's parental rights. Respondent appeals.

II. Issues
Respondent argues the trial court erred by: (1) failing to reduce its order to writing within the statutory prescribed time limit and (2) entering findings of fact numbered 12, 13, and 14.

III. Standard of Review
A proceeding to terminate parental rights is a two step process with an adjudicatory stage and a dispositional stage. A different standard of review applies to each stage. In the adjudicatory stage, the burden is on the petitioner to prove by clear, cogent, and convincing evidence that one of the grounds for termination of parental rights set forth in N.C. Gen.Stat. § 7B-1111(a) exists. The standard for appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings of fact support its conclusions of law. Clear, cogent, and convincing describes an evidentiary standard stricter than a preponderance of the evidence, but less stringent than proof beyond a reasonable doubt.
If the petitioner meets its burden of proving at least one ground for termination of parental rights exists under N.C. Gen.Stat. § 7B-1111(a), the court proceeds to the dispositional phase and determines whether termination of parental rights is in the best interests of the child. The standard of review of the dispositional stage is whether the trial court abused its discretion in terminating parental rights.
In re C.C., J.C., 173 N.C.App. 375, 380-81, 618 S.E.2d 813, 817 (2005) (internal quotations and citations omitted).

IV. Late Entry of Order
Respondent argues the trial court erred when it failed to reduce its order to writing within the statutory prescribed time limit. We agree.
N.C. Gen.Stat. § 7B-1110(a) (2005) mandates, "[a]ny order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing." (Emphasis supplied). While "a trial court's violation of statutory time limits . . . is not reversible error per se . . ., the complaining party [who] . . . appropriately articulate[s] the prejudice arising from the delay . . . justif[ies] reversal of the order." In re S.N.H., 177 N.C.App. 82, 84, 627 S.E.2d 510, 513 (2006). While "[t]he passage of time alone is not enough to show prejudice, . . . [we] recently [held] that the `longer the delay in entry of the order beyond the thirty-day deadline, the more likely prejudice will be readily apparent.'" Id. at 85, 627 S.E.2d at 513-14 (quoting In re C.J.B., 171 N.C.App. 132, 135, 614 S.E.2d 368, 370 (2005)). "This Court has held that *460 use of the language `shall' is a mandate to trial judges, and that failure to comply with the statutory mandate is reversible error." In re Eades, 143 N.C.App. 712, 713, 547 S.E.2d 146, 147 (2001) (citations omitted).
This Court has held, "prejudice has been adequately shown by a five-month delay in entry of the written order terminating respondent's parental rights." In re C.J.B., 171 N.C.App. at 135, 614 S.E.2d at 370. We stated, "For four unnecessary months the appellate process was put on hold, any sense of closure for the children, respondent, or the children's current care givers was out of reach[.]" Id.
This Court has also stated:
a delay in excess of six months to enter the adjudication and disposition order terminating her parental rights is highly prejudicial to all parties involved. Respondent-[parent], the minor[], and the foster parent[s] did not receive an immediate, final decision in a life altering situation for all parties. Respondent-[parent] could not appeal until "entry of the order." See N.C. Gen.Stat. § 7B-1113 (2003). If adoption becomes the ordered permanent plan for the minor[], the foster parent[s] must wait even longer to commence the adoption proceedings. The minors are prevented from settling into a permanent family environment until the order is entered and the time for any appeals has expired.
In re L.E.B., K.T.B., 169 N.C.App. 375, 379, 610 S.E.2d 424, 426-27, disc. rev. denied, 359 N.C. 632, 616 S.E.2d 538 (2005). "[T]he harm done in this case and similar cases is not limited solely to the respondent." Id. at 381, 610 S.E.2d at 428 (Timmons-Goodson, J., concurring). "In their own respective manners, juveniles, their foster parents, and their adoptive parents are each affected by the trial court's inability to enter an order within the prescribed time period." Id.
Upon similar allegations, this Court has repeatedly found prejudice to exist in numerous cases with facts analogous to those here. See In re D.M.M., ___ N.C.App. ___, ___, 633 S.E.2d 715, 716 (2006) (The trial court's order was reversed when it failed to hold the termination hearing for over one year after DSS filed its petition to terminate and by entering its order an additional seven months after the statutorily mandated time period.); In re D.S., 177 N.C.App. 136, 628 S.E.2d 31 (2006) (The trial court's entry of its order seven months after the termination hearing was a clear and egregious violation of N.C. Gen.Stat. § 7B-1109(e) and § 7B-1110(a), and the delay prejudiced all parties.); In re O.S.W., 175 N.C.App. 414, 623 S.E.2d 349 (2006) (The trial court's order was vacated because it failed to enter its order for six months and the father was prejudiced because he was unable to file an appeal.); In re T.W., L.W., E.H., 173 N.C.App. 153, 617 S.E.2d 702 (2005) (The trial court entered its order just short of one year from the date of the hearing and this Court reversed the trial court's order.); In re L.L., 172 N.C.App. 689, 616 S.E.2d 392 (2005) (A nine month delay prejudiced the parents.); In re T.L.T., 170 N.C.App. 430, 612 S.E.2d 436 (2005) (The trial court's judgment was reversed because it failed to enter its order until seven months after the hearing.); In re L.E.B., K.T.B., 169 N.C.App. 375, 610 S.E.2d 424 (A delay of the entry of the order of six months was prejudicial to the respondent, the minors, and the foster parent.); see also In re E.N.S., 164 N.C.App. 146, 153, 595 S.E.2d 167, 172 ("While we have located no clear reasoning for [the thirty day time limit], logic and common sense lead us to the conclusion that the General Assembly's intent was to provide parties with a speedy resolution of cases where juvenile custody is at issue."), disc. rev. denied, 359 N.C. 189, 606 S.E.2d 903 (2004).
"Although In re E.N.S. involved N.C. Gen. Stat. § 7B-807(b) and § 7B-905(a), the General Assembly added the same thirty day time limitation to both N.C. Gen.Stat. § 7B-1109(e) and § 7B-1110(a) during the same legislative session." In re L.E.B., K.T.B., 169 N.C.App. at 380, 610 S.E.2d at 427; see 2001 N.C. Sess. Laws ch. 208, § 17, § 22, and § 23. "The logic applied in In re E.N.S. towards N.C. Gen.Stat. § 7B-807(b) and § 7B-905(a) supports our analysis of N.C. Gen.Stat. § 7B-1109(e) and § 7B-1110(a)." In re L.E.B., K.T.B., 169 N.C.App. at 380, 610 S.E.2d at 427.
*461 Respondent argues: (1) he and all related parties were entitled to a speedy resolution of the petitioners' allegations; (2) C.L.K. is entitled to a permanent plan of care at the earliest possible age; (3) the trial court's delay in entering its order delayed his right to appeal; (4) the trial court's delay extends the time parents are separated from their children to the prejudice of their relationship; and (5) petitioners barred respondent from any communication with C.L.K. In re J.N.S., ___ N.C.App. ___, 637 S.E.2d 914 (2006); see In re D.S., 177 N.C.App. at ___, 628 S.E.2d at 33 (The respondent articulated prejudice when the respondent and the "child have lost time together, the foster parents are in a state of flux, and the adoptive parents are not able to complete their family plan."); In re D.M.M., ___ N.C.App. at ___, 633 S.E.2d at 718 (The respondent alleged prejudice because the respondent was unable to appeal or seek any relief from the trial court.).
The trial court completed respondent's termination of parental rights hearing on 11 October 2005. The trial court ruled respondent's parental rights were terminated that day. On 22 March 2006, nearly six months later, the trial court reduced its order to writing, signed, and filed it with the Clerk of Superior Court.
Respondent argues the facts here are similar to the cases cited because C.L.K., respondent, and the maternal grandparents did not receive an immediate, final decision within thirty days of 11 October 2005. The maternal grandparents were forced to wait longer before proceeding to adoption. C.L.K. was prevented from settling into a permanent family environment. Respondent argues he was prejudiced by the late entry of the termination of parental rights order because: (1) he could not appeal until the entry of the order; (2) he was incarcerated at the time of the termination of parental rights hearing; (3) his release date was May 2006, within weeks of the entry of the termination of parental rights order; and (4) his living situation was drastically different at the time of the hearing than at the time of the entry of the termination of parental rights order. Our precedents clearly require reversal where a late entry of order occurs and respondent alleges and demonstrates prejudice. See In re D.M.M., ___ N.C.App. at ___, 633 S.E.2d at 716.

V. Conclusion
The trial court erred and prejudiced respondent and C.L.K. when it entered its order more than five months after the conclusion of the hearing and the court orally rendered its order. "This late entry is a clear and egregious violation of both N.C. Gen.Stat. § 7B-1109(e), N.C. Gen.Stat. § 1110(a), and this Court's well established interpretation of the General Assembly's choice and use of the word `shall.'" In re L.E.B., K.T.B., 169 N.C.App. at 378, 610 S.E.2d at 426.
Respondent specifically argued and articulated the prejudice he and his minor child suffered as a result of the delay in the entry. In light of our holding, it is unnecessary to consider respondent's remaining assignments of error. The trial court's order is reversed.
Reversed.
Judge ELMORE concurs.
Judge GEER dissents by separate opinion.
GEER, Judge, dissenting.
I do not agree with the majority opinion that the order below should be reversed because it was untimely filed. I do not believe that the reasoning of the majority opinion can be meaningfully distinguished from the reasoning contained in the same authoring judge's dissent in In re T.S., ___ N.C.App. ___, ___, 631 S.E.2d 19, 25 (2006) (Tyson, J., dissenting)reasoning that was specifically rejected by the Supreme Court. In re T.S., ___ N.C. ___, 641 S.E.2d 302 (2007) (per curiam).
As our Supreme Court has confirmed, the "time limitations in the Juvenile Code are not jurisdictional in cases such as this one and do not require reversal of orders in the absence of a showing by the appellant of prejudice resulting from the time delay." In re C.L.C., 171 N.C.App. 438, 443, 615 S.E.2d 704, 707 (2005) (emphasis added), aff'd per curiam in part, disc. review improvidently allowed in part, 360 N.C. 475, 628 S.E.2d 760 (2006). *462 There is no per se rule of prejudice, but rather the appellant must specifically demonstrate how the delay in filing the order resulted in prejudice.
In this case, the majority opinion substantially ignores the appellant's argument of prejudice and substitutes its own articulations of prejudice. As has been much discussed, our Supreme Court has made it clear that "[i]t is not the role of the appellate courts, however, to create an appeal for an appellant." Viar v. N.C. Dep't of Transp., 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (per curiam). This principle applies with full force in this situation. See In re As.L.G., 173 N.C.App. 551, 555, 619 S.E.2d 561, 564 (2005) ("Even if prejudice is apparent without argument, "[i]t is not the role of the appellate courts . . . to create an appeal for an appellant.'" (quoting Viar, 359 N.C. at 402, 610 S.E.2d at 361)), disc. review improvidently allowed, 360 N.C. 476, 628 S.E.2d 760 (2006). Nevertheless, the majority opinion has taken the approach condemned in Viar: the opinion makes an argument for the appellant that he did not specifically assert on his own behalf and then relies upon that argument for reversal.[1]
The Supreme Court explained the basis for its holding in Viar: "As this case illustrates, the Rules of Appellate Procedure must be consistently applied; otherwise, the Rules become meaningless, and an appellee is left without notice of the basis upon which an appellate court might rule." 359 N.C. at 402, 610 S.E.2d at 361. Here, because the "prejudice" relied upon by the majority opinion was not specifically relied upon by the father as a basis for reversal, respondents had no notice that they needed to rebut that form of "prejudice." This is no minor problem. Although the majority opinion refers to "allegations" of prejudice, an appellant's mere assertion of prejudice is insufficientthis Court must be persuaded by the appellant that prejudice in fact occurred. See As.L.G., 173 N.C.App. at 555, 619 S.E.2d at 564 (holding "that the party asserting prejudice [from excessive delays] must actually bear its burden of persuasion"). In assessing whether an appellant has met his burden of persuasion, we must also have an opportunity to hear from the appellees as to why they contend the alleged prejudice was not in fact prejudicial.
After citing and quoting various cases, respondent made the following argument regarding the prejudice that he suffered in light of his specific circumstances:
In this case, respondent was incarcerated at the time of the hearing; his expected release date was early May, 2006; as it turns out, this was within days of the entry of the order in this case. His situation was radically different at the time of the entry of the order than on the day of trial. In the words of Judge Fox on the trial date:
I believe you when you say you're using this prison experience to come out the whole human being that you weren't when you went in. I believe you. But the point is, you've got seven more months before you're been going [sic] to be in the position to hit the ground at which time you'd be asking the Court to experiment with that child. Seven more months, another eternity in the child's life, and then start an experiment.
Clearly, the passage of the "eternity" which weighed so heavily on Judge Fox's mind on the trial date was not at all the situation which existed on the date of the entry of judgment. Given what he considered to be the "very, very tempting" alternative of not terminating, even on the trial date, Judge Fox may well have been swayed in the other direction by the changed circumstances. Precedent holding that delays approaching and exceeding six months are prejudicial together with Judge Fox's illuminating statement, dictate *463 a finding of prejudicial error and reversal.

(Citations to record omitted; emphasis added.) In other words, respondent's sole argument regarding prejudice is: (1) six months' delay is per se prejudicial, and (2) Judge Fox would have been unlikely to terminate his rights had the hearing been held at the time of respondent's release from incarceration.
This Court has held time and time again "that any violation of the statutory time lines [is] not reversible error per se," regardless of the length of the delay, and only "an appropriate showing of prejudice arising from the delay" justifies reversal. As.L.G., 173 N.C.App. at 555, 619 S.E.2d at 564. Further, mere citation to other cases in which prejudice was found from similar delays is insufficient since "[w]hether a party has adequately shown prejudice is always resolved on a case-by-case basis. . . ." Id. at 554, 619 S.E.2d at 564. Thus, respondent's bare reliance upon the length of the delay cannot support reversal of the order.
We are, therefore, left only with respondent's curious contention relating to his prison release date. If the trial court had complied with the statutory deadline, the order would have been entered long before his release from incarceration. The fact that the court could not consider respondent's improved circumstances upon release was due to the timing of the hearing and not the delay in the entry of the order. Had there been no error with respect to the entry of the order, the prejudice articulated by respondent would not have been eliminated. Accordingly, respondent has failed to demonstrate any prejudice from the delay in the filing of the order. See id. at 557, 619 S.E.2d at 565 ("Here, respondent has argued prejudice; however, we cannot agree that any befell her from DSS's delay.").
Even if it were permissible for this Court to scan the record to uncover any possible prejudice overlooked by the appellant, the "prejudice" relied upon by the majority does not fit the facts of this case. This is a private termination of parental rights proceeding. Petitioners, the child's maternal grandparents, already have been awarded temporary custody of their grandchild, who has lived with them since birth. The delay in the filing of the order does not delay "permanency" for the grandparents because their relationship with the child is one of blood and will exist regardless of the outcome of these proceedings. The child has not been prejudiced by the delayed order because she continues to reside with her grandparents, who have legal custody, and respondent himself has stated only that "[w]ithin 12 months of the trial date, respondent hopes to be stable, working, and in a position to regain custody of his daughter." (Emphasis added.) In other words, respondent's own circumstanceshis incarcerationprecluded even the hope of permanency until, at the earliest, a year after the termination of parental rights hearing.
The majority opinion's mere recitation that the grandparents were forced to wait longer to proceed with adoption and the child was prevented from settling into a permanent family environment shows little true prejudice when, as here, the child is in the legal custody of a close family member, and the parent admits he cannot yet, in any event, assume custody. Indeed, the majority opinion's "prejudice" would apply in almost any case, renderingcontrary to this Court's numerous decisions otherwisedelays in filing orders per se prejudicial.
With respect to respondent's delayed ability to appeal, the majority opinion has failed to explain in what manner that factor prejudiced respondent. If respondent desired to appeal more quickly, it was within his power to request that the court enter its order so that an appeal could be taken. More importantly, respondent has, in his appellate brief, used that delay to his advantage by arguing that reversal of the order terminating his parental rights is warranted because his circumstances at the time of the entry of the order were completely different than at the time of the hearing.
In sum, I do not believe that respondent has met his burden of demonstrating prejudice from the belated filing of the order. I would, therefore, address respondent's remaining arguments. Respondent argues (1) that the evidence failed to support the trial court's finding that he did not provide support *464 for the child for more than a year prior to the filing of the petition, (2) that the trial court failed to make sufficient findings of fact to support its conclusion that respondent willfully abandoned the child for at least six consecutive months immediately preceding the filing of the petition, and (3) that the trial court failed to make sufficient findings of fact to support its conclusion that the child's best interests would be served by terminating respondent's parental rights.
The trial court first concluded that termination of parental rights was warranted under N.C. Gen.Stat. § 7B-1111(a)(4). N.C. Gen.Stat. § 7B-1111(a)(4) permits termination if "[o]ne parent has been awarded custody of the juvenile by judicial decree or has custody by agreement of the parents, and the other parent whose parental rights are sought to be terminated has for a period of one year or more next preceding the filing of the petition or motion willfully failed without justification to pay for the care, support, and education of the juvenile, as required by said decree or custody agreement."
Although the trial court cited § 7B-1111(a)(6) as a second basis for termination of parental rights, the conclusion of law stated: "That termination of Father's parental rights is warranted by N.C.G.S. § 7B-1111(a)(6) because the clear and convincing evidence shows that Father has had no contact with the Child and, thereby, has willfully abandoned the Child for at least six (6) consecutive months immediately preceding the filing of this action." N.C. Gen.Stat. § 7B-1111(a)(6), however, allows termination upon a showing that "the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101. . . ." It is apparent, therefore, that the trial court's order contains a typographical error and that it intended to rely upon N.C. Gen.Stat. § 7B-1111(a)(7), which provides: "The parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion. . . ."
I do not believe it is necessary to address whether N.C. Gen.Stat. § 7B-1111(a)(4) provided a proper basis for terminating respondent's parental rights because I would uphold the trial court's ruling under § 7B-1111(a)(7). See In re B.S.D.S., 163 N.C.App. 540, 546, 594 S.E.2d 89, 93-94 (2004) ("Having concluded that at least one ground for termination of parental rights existed, we need not address the additional ground[s] . . . found by the trial court."). With respect to the abandonment ground, respondent argues only that the trial court made insufficient findings of fact. I disagree.
"Willful abandonment has been found where a parent withholds his presence, his love, his care, the opportunity to display filial affection, and [willfully] neglects to lend support and maintenance." In re D.J.D., 171 N.C.App. 230, 241, 615 S.E.2d 26, 33 (2005) (quoting In re McLemore, 139 N.C.App. 426, 429, 533 S.E.2d 508, 509 (2000)). Further, "[d]espite incarceration, a parent failing to have any contact can be found to have willfully abandoned the child. . . ." Id.
In this case, the trial court found (1) that the child has resided with her grandparents since her birth, (2) that the grandparents have "cared for all of the Child's emotional and physical needs since her birth," (3) the father was awarded temporary visitation with the child in an order granting temporary custody of the child to the grandparents, (4) the grandparents have neither prevented nor interfered with the father's visitation rights,[2] and (5) respondent has had no contact with the child. (Emphasis added.) In sum, these findings of fact establish that respondent has provided for none of the child's needs since her birth and has had no contact with the child despite a legal entitlement to visitation.
These findingsalthough sparseare sufficient, under our case law, to support the conclusion that the criteria of § 7B-1111(a)(7) were met. See, e.g., id. at 240-41, 615 S.E.2d at 33-34 (finding sufficient basis for abandonment when the respondent had taken no "steps to develop or maintain a relationship with his children"); In re Humphrey, *465 156 N.C.App. 533, 540, 577 S.E.2d 421, 427 (2003) (upholding conclusion of abandonment when the respondent's sole contact with the child in six years was a single birthday card, and the respondent had provided no financial support); McLemore, 139 N.C.App. at 430, 533 S.E.2d at 510 (upholding conclusion of abandonment when "[t]he findings indicate that during these six months, respondent made no contacts with his child, financial or otherwise"). Accordingly, I would hold that the trial court made sufficient findings of fact to support its conclusion that grounds existed to terminate respondent's parental rights based on abandonment.
I likewise would reject respondent's argument that the trial court made insufficient findings of fact to support its conclusion that it was in the child's best interests to terminate respondent's parental rights. I believe that conclusion is adequately supported by the findings that the child has lived with her grandparents since birth, that her grandparents have cared for all of the child's emotional and physical needs, and that respondent has had no contact with the child despite having been awarded visitation. As with the grounds for termination, additional findings of fact would have been preferable, but I believe these findings of fact are still sufficient, if barely so, to justify the trial court's best interests determination. Accordingly, I would affirm the decision of the trial court terminating respondent's parental rights.
NOTES
[1] The majority opinion states: "Respondent argues he and all related parties were entitled to a speedy resolution of the petitioners' allegations, C.L.K. is entitled to a permanent plan of care at the earliest possible age, the trial court's delay in entering the order delayed his right to appeal, the trial court's delay extends the time parents are separated from their children to the prejudice of their relationship, and petitioners barred respondent from any communication with C.L.K." The majority opinion has put words in respondent's mouth. Although respondent cites cases in which those arguments were made, respondent does not in fact make these arguments with respect to himself.
[2] Although respondent asserts otherwise in the statement of facts section of his brief, he did not assign error to this finding of fact, and it is, therefore, binding on appeal. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).