IN RE: S.F.P.
No. COA08-131
Court of Appeals of North Carolina
Filed July 1, 2008
This case not for publication
Sharp, Michael, Graham & Evans, LLP, by Steven D. Michael, for petitioner-appellee.
Pamela Newell Williams, Associate Legal Counsel N.C. Administrative Office of the Courts, for guardian ad litem
Charlotte Gail Blake for respondent-appellant.
ELMORE, Judge.
Respondent is the mother of S.F.P. (hereinafter known by the pseudonym of "Sophie"), a female child born in 1999. Respondent appeals from an order terminating her parental rights to Sophie.
Sophie came into the custody of the Pasquotank County Department of Social Services (DSS) on 6 December 2004 upon the filing of a juvenile petition alleging Sophie was a neglected and dependent juvenile. The court adjudicated Sophie as dependent in open court on 22 February 2005 and filed a written adjudication and disposition order on 10 May 2005. The court continued custody with DSS pursuant to a permanent plan of reunification with respondent. On 9 October 2006, the court filed an order in which it ordered cessation of reunification efforts and changed the permanent plan to adoption. The court decreed that grounds existed for termination of parental rights and directed DSS to "begin the process." The court next conducted a review hearing on 26 April 2007, and on 21 May 2007 filed an order in which it again decreed that grounds existed for termination of parental rights. The court also directed that "at such time as the appeal of the respondent-mother to the North Carolina Court of Appeals has been finally resolved, the Department of Social Services shall institute a proceeding for the termination of the parental rights of the juvenile's biological parents."
On 13 August 2007, DSS filed a petition to terminate the parental rights of Sophie's biological parents. The court conducted a hearing on 18 October 2007, and on 21 November 2007 filed an order terminating the parental rights of Sophie's biological parents. As grounds for terminating respondent's parental rights, the court concluded that (1) respondent had neglected Sophie; (2) respondent had willfully left the child in foster care for more than twelve months without showing the court that reasonable progress has been made in correcting those conditions which led to the removal of the juvenile; and (3) respondent had willfully failed, for a continuous period of six months preceding the filing of the petition, to pay a reasonable portion of the costs of care for the child although physically and financially able to do so.
Respondent's counsel filed notice of appeal from this order on 27 November 2007. Respondent failed to sign the notice of appeal. On 10 January 2008, respondent's counsel filed an amended notice of appeal containing respondent's signature.
Respondent filed the record on appeal in this Court and subsequently filed a petition for writ of certiorari. DSS and the guardian ad litem filed motions to dismiss the appeal on the ground that respondent had failed to file a proper notice of appeal in a timely fashion. We agree that proper notice of appeal was not filed in a timely fashion in accordance with N.C. Gen. Stat. § 7B-1001(b) and N.C.R. App. P. 3A. "[N]otice of appeal shall be given in writing by a proper party . . . and shall be made within 30 days after entry and service of the order. . . ." N.C. Gen. Stat. § 7B-1001(b) (2007). As proper and timely notice of appeal is jurisdictional, we must dismiss the appeal. In re A.L., 166 N.C. App. 276, 277, 601 S.E.2d 538, 538 (2004). Nevertheless, we exercise our discretion and allow the petition for writ of certiorari to permit consideration of the appeal on the merits.
Respondent contends that the court's order terminating her parental rights should be vacated because DSS did not comply with N.C. Gen. Stat. § 7B-907(e) by failing to file the petition to terminate parental rights within sixty calendar days from the date that the trial court changed the permanent plan from reunification to adoption and instructed DSS to begin the termination process. N.C. Gen. Stat. § 7B-907(e) provides that if a court determines at a permanency planning hearing that a proceeding to terminate parental rights is necessary, "the director of the department of social services shall file a petition to terminate parental rights within 60 calendar days from the date of the permanency planning hearing unless the court makes written findings why the petition cannot be filed within 60 days." N.C. Gen. Stat. § 7B-907(e) (2007).
We have held that "time limitations in the Juvenile Code are not jurisdictional . . . and do not require reversal of orders in the absence of a showing by the appellant of prejudice resulting from the time delay." In re C.L.C., 171 N.C. App. 438, 443, 615 S.E.2d 704, 707 (2005) (citations and quotations omitted), aff'd and disc. review improvidently allowed, 360 N.C. 475, 628 S.E.2d 760 (2006). Accordingly, we have consistently held that "any violation of the statutory time lines was not reversible error per se, as many respondents have argued, but that an appropriate showing of prejudice arising from the delay could constitute reversal." In re As.L.G., 173 N.C. App. 551, 555, 619 S.E.2d 561, 564 (2005), disc. review improvidently allowed, 360 N.C. 476, 628 S.E.2d 760 (2006) (citation omitted). To prove prejudice, the respondent must show that the delay "had a probable impact on the outcome of the proceeding." In re D.B., N.C. App. ___, ___, 652 S.E.2d 56, 59 (2007).
Respondent argues that the delay had a probable impact on the court's adjudication; if the petition had been filed in November 2006, she could have shown that she had paid $1,316.00 in child support during the six months prior to the petition's filing instead of the amount of $481.00 that she paid during the six months preceding the filing of the actual petition. She posits that "[i]t is probable that the trial court would not have found that grounds existed to terminate the mother's parental rights for failure to pay child support had the termination petition been filed timely." She also argues that the court's finding concerning her failure to pay support supported the conclusions that she neglected the child and that she failed to make reasonable progress in correcting the conditions that led to the removal of the child. She contends that the delay had an impact upon the court's disposition because if the petition had been filed in November 2006, there would have been less time for the parental bond to erode after visitations were discontinued.
Based upon our review of the court's findings of fact, we conclude that the delay did not have a probable impact upon the court's decision to terminate respondent's parental rights. The court's adjudicatory findings show that at the time DSS assumed custody of Sophie, respondent was incarcerated in the Commonwealth of Virginia. The adjudication and disposition order entered on 10 May 2005 required respondent, once she was released from jail, inter alia: to undergo a mental health evaluation; to seek and maintain employment/income, housing, and transportation; and to cooperate with the Albemarle Child Support Enforcement Agency. Prior to her incarceration, respondent placed Sophie in the home of a couple in Pasquotank County. This couple contacted DSS seeking assistance after respondent sent correspondence and made telephonecalls containing perceived threats against the couple. Respondent was released from incarceration on 25 August 2005, but was incarcerated again from 4 January 2006 until 20 June 2006. The court entered an order on 21 September 2005 requiring respondent "to have a psychological assessment, undergoing [sic] a full battery of psychological testing to determine her acuity for parenting; maintain full time employment for no less than six months; seek and maintain only one domicile for not less than six months; and attend parenting classes for no less than six months." More than one year later, on 9 October 2006, the court entered an order discontinuing visitations with the child until respondent completed the psychological evaluation. Since her release from incarceration in August 2005, respondent has had no less than ten different residences, some lasting only days.
Respondent also demonstrated instability in her relationships with others. In September 2006, she began cohabiting in Virginia with a man to whom she was engaged, even though she was still legally married to another man, neither of whom fathered Sophie. By April 2007, respondent had separated from her fiancée and reconciled with her husband. As of the time of the hearing, respondent had pending criminal charges in Virginia for assault and battery and destruction of property arising out of her relationship with her fiancée. On 8 October 2007, respondent's husband summoned the police to investigate a domestic violence incident and asserted that respondent had assaulted him. Respondent was charged with domestic assault.
On 13 August 2007, a no-contact order for stalking was entered against respondent as a result of respondent's threats to take a couple's child whom the couple had adopted from respondent and respondent's posting flyers "causing [the couple] to be tormented and terrorized and placing them in fear for the safety of their daughter."
A psychological evaluation conducted on respondent disclosed that respondent "suffers from a personality disorder which will to some degree compromise her ability to be a healthy parent and that a personality disorder such as what respondent-mother suffers from is likely to be chronic and life long." Respondent has "repeatedly failed" during the course of more than thirty-four months while Sophie has been in DSS custody "to comply in a timely manner and in good faith" with court orders and with DSS in its efforts to reunify the child with respondent.
The court's dispositional findings show that Sophie's therapist observed that Sophie began to withdraw from respondent beginning in January 2006 when respondent returned to jail for a second time, long before the November 2006 deadline for filing the termination petition. Sophie considers the foster parents to be her family and she adamantly wants them to adopt her so she can have a place to belong. Sophie has expressed to her social worker, her therapist, and her guardian ad litem that she is afraid of respondent and does not wish to visit or live with her. Prior to having her visits terminated, respondent frightened Sophie several times by raising her voice to her, by telling her that they weremoving back to Texas, by calling her foster parents bad people and liars, and by asking inappropriate questions about the other foster children in the household. Respondent once "caused such a scene that (Sophie) cowered in a fetal position on the sofa and covered her head with a blanket." Thus, it is evident that the erosion of the bond between respondent and Sophie resulted more from respondent's behavior than any delay in the filing of the petition to terminate rights.
The order terminating respondent's parental rights is
Affirmed.
Chief Judge MARTIN and Judge ARROWOOD concur.
Report per Rule 30(e).